Robert **DUSHAW,** Plaintiff–Appellee, Cross–Appellant,

v.

**ROADWAY EXPRESS, INC., and Truck Drivers Union Local 407, Defendants–Appellants, Cross–Appellees.**

Nos. 92–4281, 92–4282 and 92–4295.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1995.

Decided Sept. 27, 1995.

As Revised on Denial of Rehearing En Banc Dec. 1, 1995.

Theodore E. Meckler (argued and briefed), Meckler & Meckler, Cleveland, OH, for Robert Dushaw.

Barbara J. Leukart (argued and briefed), Joseph A. Piacquad, Jones, Day, Reavis & Pogue, Cleveland, OH, for Roadway Express, Inc.

John R. Doll (argued and briefed), Julie C. Ford (briefed), Logothetis & Pence, Dayton, OH, for Truck Drivers Union Local 407.

Before: KENNEDY, WELLFORD, and SILER, Circuit Judges.

SILER, Circuit Judge.

Defendants, Roadway Express, Inc. ("Roadway") and Truck Drivers Union Local 407 ("Union"), appeal the district court's judgment and challenge the amount of damages and fees assessed against them for, respectively, breach of a collective bargaining agreement and breach of the duty of fair representation with regard to the discharge of plaintiff Robert Dushaw. Dushaw cross appeals, challenging the court's denial of reinstatement and front pay. For the reasons stated herein, we reverse.

## I.

Dushaw was a driver for Roadway and a member in good standing of the Union at the time of his discharge. He was the Union's elected shop steward from 1982 until his discharge. As shop steward, he reviewed grievances filed by other employees, forwarded those grievances to the Union's business agent, and attended employees' grievance hearings with the business agent. Although the Union claims that the business

agent, not the steward, is solely responsible for representation of the employee in grievance proceedings, the record shows that the business agent relied on the steward for much of the information necessary to provide effective representation.

In his second re-election as steward, Dushaw defeated Ken Scullion, who had been supported by Richard Sanzo, the Union's business agent. Sanzo appointed Scullion alternate shop steward, and often asked Scullion rather than Dushaw to come to the grievance hearings. Sanzo felt that Dushaw was too vocal and antagonistic at the hearings. Sanzo urged Dushaw not to run for re-election and warned him that he would be fired if he continued as steward.

Sanzo's dislike of Dushaw was shared by many of the Roadway supervisors and Union members, who claimed that Dushaw was a "bad employee." Dushaw's supervisors wrote him up for numerous minor incidents. One supervisor wrote that "Dushaw has no interest in improving his work habits. We will start putting pressure on him and start hanging paper on him for every wrong move." Another wrote that Dushaw "is a snake and has to be watched at all times ... We get him, and our jobs will be much easier."

On April 5, 1987, Roadway notified Dushaw that it would be conducting a hearing to discuss his overall work record and an incident that occurred on the Beachwood delivery route. At the hearing, the company considered a number of minor incidents, such as Dushaw's failure to clean out his truck, reporting to work five minutes late, and failing to call in a delay at one of his stops. The company's decision to discharge Dushaw, however, was based primarily on the Beachwood incident and the Gray Drug incident.

The Gray Drug incident involved a delivery made to Gray Drug on March 4, 1987. Dushaw arrived at the Gray Drug warehouse shortly after 9:30 a.m., but due to the number of trucks occupying the unloading doors and waiting to unload, he was not assigned an unloading door until 11:00 a.m. Gray Drug, in objecting to being charged for the delay, stated in a letter to Roadway that Dushaw had been assigned a loading door at 9:55 a.m., and that the delay in unloading was caused by Dushaw. Although there is evidence that Dushaw called the Roadway dispatcher to inform him of the delay, Roadway accused Dushaw of failing to report in properly and of falsifying his daily log with respect to the delivery.

The Beachwood incident occurred on April 20, 1987, the day before the hearing. On that day, Dushaw was assigned the Beachwood delivery route. He experienced trouble accessing freight at one stop, apparently because the freight either was loaded improperly or had shifted in transit. Dushaw claims that he informed the dispatcher of the problem and that he would skip a half dozen stops and return to them later in the day, when he could more easily access the freight for those stops. A Roadway supervisor was "tailing" Dushaw that day, allegedly looking for Dushaw to make mistakes. Roadway accused Dushaw of failing to make all of his assigned deliveries because of his unwarranted deviation from the delivery schedule.

At the company level hearing, Dushaw was represented by Sanzo, and Scullion was present as alternate shop steward. With respect to the Gray Drug incident, Roadway presented the letter from Gray Drug stating that Dushaw was assigned an unloading door at 9:55 a.m. Dushaw and Sanzo presented Dushaw's version of the facts. Apparently, the main complaint Dushaw had with Sanzo's representation at this hearing was that he failed to call Mr. Sartain, one of the dispatchers, to corroborate Dushaw's story. However, when Dushaw was asked, later in the proceedings, whether Sanzo had presented all of the arguments he (Dushaw) wished to have presented, he answered affirmatively.

During the course of the company level hearing, Scullion was questioned about the Beachwood incident. He stated that the truck had been properly loaded that day, and that Dushaw would not have had any valid reason for skipping stops on his delivery route. A number of minor incidents were also discussed at the hearing, but it is undisputed that Roadway relied heavily on the Gray Drug and Beachwood incidents in firing Dushaw.

After Roadway discharged Dushaw, the Union filed a grievance with the Cleveland Joint Committee and another hearing was conducted. Sanzo again represented Du-

shaw. Scullion was not present, although his testimony at the company level hearing was presented by Roadway. Dushaw gave his version of the story. Roadway presented maps, charts, and the manifest that listed in detail the loading of the truck and the delivery route used by Dushaw with regard to the Beachwood incident. The company again alleged that, in the Gray Drug incident, Dushaw had been assigned a door at 9:55; Dushaw stated that Gray Drug had corroborated his version of the story, admitting that it had made ·a mistake. Gray Drug ultimately retracted the portion of the letter accusing Dushaw of being assigned an unloading door at 9:55, but the retraction letter had not yet been sent to Roadway. At no point, however, did Gray Drug withdraw its request to Roadway not to send Dushaw back to its facility because of its dissatisfaction with his services. In any event, Dushaw presented his story and the results of his efforts to interview corroborating witnesses at this hearing as well as at the subsequent state hearing. The Cleveland Joint Committee deadlocked on the issue of whether Roadway had good cause to discharge Dushaw, so the Union pursued a grievance up to the State Joint Committee.

The issues raised before the State Committee were essentially the same as those raised at the Cleveland hearing. It was at this hearing that Dushaw testified that he was satisfied with Sanzo's representation and that he had been given the opportunity to present all arguments he wished to present to the committee. The State Committee unanimously found that Roadway had good cause to terminate Dushaw.

Dushaw then filed this "hybrid § 301" action. *See* 29 U.S.C. § 185 (Section 301 of the National Labor Relations Act). Two years after the testimony was concluded in the bench trial, the district court found for Dushaw. It found that, because of the antipathy shared toward Dushaw, Roadway had targeted Dushaw for termination and had discharged him without just cause. Because the collective bargaining agreement provided that Roadway "shall not discharge nor suspend any employee without just cause[,]" the court concluded that Roadway had breached the collective bargaining agreement.

The court, citing *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 309–10 (6th Cir. 1975), also found that the Union had breached the duty of fair representation by failing "to treat Dushaw 'without hostility or discrimination;' to assert Dushaw's rights 'in complete good faith and honesty;' and to 'avoid arbitrary conduct.' " It found that the Union's conduct "significantly tainted the grievance proceedings to the extent that but for such conduct, it is more likely than not that a different result would have ensued." The court awarded damages and attorneys' fees to Dushaw and assessed punitive damages against Roadway.

## II.

■ In order to recover from either the Union or Roadway, Dushaw must prove both breach of the collective bargaining agreement by Roadway and breach of the duty of fair representation by the Union. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir.1994). To prove breach of the duty of fair representation, Dushaw must show that the Union's actions were either arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). Once a plaintiff proves that the Union acted in bad faith or in an arbitrary or discriminatory manner, however, the plaintiff must also prove that the Union's actions tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach. *Black*, 15 F.3d at 585. Moreover, the impact of the Union's breach on the outcome of the grievance proceeding must have been substantial:

> to establish a breach of fair representation, the plaintiff must meet the onerous burden of proving that the grievance process was "seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct."

*Id.* (citation omitted).

■ The district court's determinations that the Union acted arbitrarily, in a discriminatory manner, and in bad faith, and that, but for such action the outcome of the grievance procedure would have been different, are factual findings, which we review for clear error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Findings of fact are

clearly erroneous if, viewing the evidence as a whole, this court is left with "the definite and firm conviction that a mistake has been committed." *Id.*

■ Assuming, arguendo, that the Union acted in bad faith or in an arbitrary or discriminatory manner, we find no evidence to support a finding that such actions tainted the grievance procedure.[1] As for Scullion's alleged falsifications against Dushaw at the company level hearing,[2] Dushaw was allowed to present his version of the story, and, more importantly, the ultimate decision to affirm Dushaw's discharge was made by a committee who had heard both sides of the story and had seen the manifest and records refuting Scullion's statements. As for Sanzo's failure to raise certain issues or call certain witnesses, Dushaw admitted at the state level hearing that he had had an opportunity to present all issues he wished to present. Moreover, in contrast to cases in which missing evidence would have caused the employer to reconsider a decision to discharge the employee, there is no indication that the Union failed to present evidence that "probably would have brought about a different decision" in the grievance proceeding. *See Black,* 15 F.3d at 585 (citation omitted).

The district court's finding of taint is clearly erroneous. Without proof that the grievance proceeding was tainted, Dushaw's hybrid § 301 action must fail. *See id.* Discussion of additional issues raised on appeal is, therefore, unnecessary.

**REVERSED.**

HARRY W. WELLFORD, Circuit Judge.

I write with respect to the panel's denial of a rehearing only to emphasize that this case presents a very close question on the question of taint as a consequence of Scullion's mistaken or false testimony. The taint, if any, however, in my view, as expressed by our opinion in light of the entire record, did not affect the ultimate outcome. In any event, I think it also appropriate to point out that plaintiff would be entitled, at most, to

appropriate compensatory damages only after mitigation, and to *reasonable* attorney fees. The award by the district court which included improper punitive damages and exorbitant fees and interest would have been set aside.

Before: KENNEDY, WELLFORD and SILER, Circuit Judges.

## ORDER

Dec. 1, 1995

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original hearing panel.

The panel has further reviewed the petition and concludes that the opinion filed on September 27, 1995 should be revised. Accordingly, the following separate writing is hereby inserted at the end of the opinion:

In all other respects, the petition for rehearing en banc is denied.

---

1. Dushaw's argument that Sanzo failed to raise the issue of timeliness of the letter of investigation regarding the Gray Drug incident, however, fails to meet the first test in that the failure was caused, at most, by negligence, which falls short of arbitrary, discriminatory, or bad faith action. *See United Steelworkers of America v. Rawson,*

495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990).

2. We decline to address whether Scullion's statements are attributable to the Union, but assume for purposes of this analysis that they are.