**David M. BARTON Plaintiff,**

v.

**TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION (TCU), an affiliate of AFL–CIO; and Consolidated Rail Corporation, Defendants.**

No. 97–74629.

United States District Court, E.D. Michigan, Southern Division.

Oct. 28, 1998.

Frank G. Becker, Southfield, MI, for Plaintiff.

Robert C. Ludolph, Detroit, MI, Michtell M., Kraus, Esq., Rockville, MD, Renate Klass, Southfield, MI, for Defendants.

### OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. *Introduction*

This case brought pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.,

is presently before the Court on separate Motions for Summary Judgment filed by Defendants Transportation Communications International Union ("TCU") and Consolidated Rail Corporation ("Conrail").[1] The Court held a hearing on Defendants' Motions on October 15, 1998. Having heard the oral arguments of counsel and having reviewed and considered the briefs and supporting documents submitted by the parties, the Court is now prepared to rule on Defendants' Motions. This Opinion and Order sets forth that ruling.

### II. *Factual Background*

The factual background of this case is largely undisputed. Prior to his termination in 1995, Plaintiff was employed by Conrail as an auto inspector clerk at the Wayne Auto Terminal in Wayne, Michigan.[2] At all times relevant to the present dispute Plaintiff was a member of TCU, which was party to a collective bargaining agreement ("CBA") with Conrail that covered Plaintiff's employment. As a Conrail employee within the clerical craft and class at the Wayne Auto Yard, Plaintiff was represented by TCU System Board 86 and TCU District 464, respectively.

#### A. *Collective Bargaining Agreement*

CBA Rules 42 and 43 set forth the procedures for investigating charges against employees and appealing disciplinary actions. Because the validity of Plaintiff's claims in this action turn largely on whether Defendants complied with the procedures set forth in Rules 42 and 43, the Court provides the relevant text of the rules below:

### RULE 42 INVESTIGATION

(a) An employee who has been in the service more than sixty (60) calendar days or whose application has been approved shall

---

1. Conrail actually filed a Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment. For the purposes of this Opinion and Order, the Court treats Conrail's Motion as a motion for summary judgment.

2. Plaintiff was first employed by Conrail in February of 1970 as a yard clerk.

not be disciplined or dismissed without a fair and impartial investigation. He may, however, be held out of service pending such investigation only if his retention in service would be detrimental to himself, another person, or the Company. The investigation shall begin within ten (10) calender days of the date when charged with the offense or held from service and completed as soon as possible. A decision will be rendered within fifteen (15) calendar days in writing, after completion of the investigation, copy to Local Chairman.

(b) An employee charged with an offense shall be given written notice in advance of the investigation of the exact offense involved with copy to Local Chairman. No charge shall be made that involves any matter of which the Company has had knowledge thirty (30) calendar days or more

\* \* \* \* \* \*

(d) At investigations an employee, if he desires to be represented may only be accompanied and represented by one or more duly accredited representatives.

\* \* \* \* \* \*

(f) If discipline is to be imposed following investigation, the employee to be disciplined shall be given written notice thereof at least fifteen (15) calendar days prior to the date on which the discipline is to become effective, except that in cases involving dismissal such dismissal may be made effective at any time after decision without advance notice. His duly accredited representative shall be given a copy of the notice of discipline.

(g) Unless the time limits provided in this Rule 42 are extended by agreement, failure to comply therewith shall render the charges and/or discipline null and void.

### RULE 43 APPEALS

(a) Appeal from discipline must be made in writing by the employee or on his behalf by his duly accredited representative to the Manager Labor Relations (or other designated officer) within fifteen (15) calendar days after receipt of written notice of discipline.

\* \* \* \* \* \*

(b) A hearing on appeal, if requested, shall be granted within ten (10) calendar days of receipt of appeal. On appeal, an employee may only be accompanied by one (1) or more duly accredited union representative.

(c) After the appeal has been acted upon by the Manager Labor Relations, the employee and his duly accredited representative shall be advised, in writing, of his decision within fifteen (15) calendar days of receipt of appeal or date of hearing on appeal, whichever is applicable.

\* \* \* \* \* \*

(d) If further appeal is taken, it must be filed with the Senior Director–Labor Relations and a copy furnished the official whose decision is appealed, within fifteen (15) calendar days after the date of decision. A hearing on appeal, if requested, shall be granted within ten (10) calendar days of receipt of appeal. Decision on appeal shall be rendered within (15) calendar days of receipt of appeal or date of hearing, whichever is applicable.

(e) An appeal denied in accordance with paragraph (d) shall be considered closed unless, within one (1) year from the date of the decision of the Senior Director–Labor Relations, proceedings are instituted before the National Railroad Adjustment Board or such other Board as may be legally substituted therefor under the Railway Labor Act.

### B. *Plaintiff's Dismissal*

On June 5, 1995, Conrail removed Plaintiff from service prior to the commencement of his shift on charges relating to the alleged theft of a Conrail pager.[3] In a Notice of

---

**3.** Plaintiff had a history of disciplinary problems with Conrail. In December of 1991, Barton was issued a notice of discipline and assessed a punishment of ten days deferred suspension for failing to properly perform his job duties. TCU progressed a grievance which an arbitrator sustained on procedural grounds. In March of 1992, Plaintiff was assessed thirty days of deferred suspension on the same charge. TCU

progressed a grievance which was denied by an arbitrator. In June of 1992, Plaintiff was terminated from employment on charges of: (1) falsifying a disability benefits form; (2) falsely using sickness to avoid work; and (3) providing false information to a supervisor. TCU progressed Plaintiff's grievance up to and including arbitration, where the arbitrator sustained Barton's grievance with respect to the first charge, but

Investigation dated June 9, 1995, Conrail informed Plaintiff that a disciplinary hearing was scheduled for June 15, 1995.[4] At the request of TCU District 464 Chairman Leroy Krempec, Conrail first postponed the disciplinary hearing until June 22, and then later to June 28, 1995. Barton met with both Krempec and TCU District General Secretary/Treasurer Stephanie Reavis "a couple times" prior to the investigatory hearing. [Barton Dep. p. 60].

As authorized by CBA Rule 42, Conrail held Plaintiff's investigatory hearing on June 28, 1995. Barton attended the hearing along with his union representatives Krempec and Reavis. At the outset, Krempec lodged an objection to the proceedings and requested that Conrail immediately drop all charges and return Barton to service on the grounds that Conrail was in violation of CBA Rule 42(a), which required the employer to hold all investigatory hearings within ten days of an employee being held from service.[5] A Conrail employee serving as the hearing officer noted the objection but proceeded with the hearing. The hearing officer called numerous witnesses, including Plaintiff's immediate supervisor Milbourne Taylor and co-workers Wesley Czaplicki and Patricia Murphy, to establish that Plaintiff had stolen the pager and given it to his son. Krempec cross-examined each witness and Plaintiff also cross-examined Taylor and Czaplicki. In addition, Barton called his son and a friend of his son to testify. At the close of the hearing, Plaintiff was given the opportunity to make a final statement, in which he professed his innocence and claimed that he was being railroaded by Taylor and Czaplicki. Krempec also made a final statement, in which he reasserted his procedural objection and argued that Conrail had failed to demonstrate that Plaintiff had stolen the pager.[6]

On July 10, 1995, Conrail timely notified Plaintiff by certified mail that, based upon its investigation, the company was dismissing Barton in all capacities. Pursuant to CBA Rule 43(a), Krempec filed a timely appeal of the dismissal by letter, faxed on July 17, 1995, to Dale Elston, Conrail's Manager of Labor Relations. Krempec asserted three grounds for appeal: (1) Barton was not guilty; (2) Conrail failed to hold the investigatory hearing within ten days as required by CBA Rule 42(a); and (3) Conrail failed to send Krempec a copy of the original Notice of Investigation as required by CBA Rule 42(b). On August 8, 1995, Elston issued a decision upholding Plaintiff's dismissal which was further appealed on August 23 to L.J. Finnegan, Conrail's Senior Director of Labor Relations, in accordance with CBA Rule 43(d). On November 1, 1995, Finnegan rejected the August 23 appeal by letter to TCU System Board 86 General Chairman Anthony P. Santoro, Jr. At this point in time, System Board 86 Vice General Chairman Victor Goffredo assumed control of Barton's appeal.[7]

---

denied it with respect to the other two charges. As a result, the arbitrator set aside Plaintiff's termination, but did not award back pay.

4. The Notice of Investigation provided:

You are to attend an Investigation at Room 385, 17301 Michigan Avenue, Dearborn, MI 48126–2700 on Thursday June 15, 1995 1:00 p.m. in connection with the following: Theft of Conrail Skypager (800–759–7243, PIN # 76700) Disappeared from Wayne Auto Terminal, Wayne, MI on Sunday, May 28, 1995.

\* \* \* \* \* \*

You may arrange to be accompanied by a representative in your collective bargaining agreement. You may produce witnesses on your behalf, without expense to the Company, and you and your representative may cross examine witnesses.

5. Krempec asserted that because Barton was held from service prior to the commencement of his shift on June 5, 1995, he was effectively removed from service on June 4, 1995. Therefore the originally scheduled hearing date of June 15, 1995 fell outside the ten day limit proscribed by CBA Rule 42(a).

6. Krempec argued that a more likely explanation was that co-worker Czaplicki had accidentally left the pager in Barton's truck and that the incident was blown out of proportion because of Czaplicki's desire to "save face" with Supervisor Taylor.

7. In a sworn affidavit submitted to the Court, Goffredo stated:

Grievances progressed by System Board 86 on behalf of its members are handled by TCU district officers at the investigatory state and through the first, on-property appeal. The second appeal and arbitration of such grievances are handled by officers and employees of the System Board like myself. Neither the Union nor Conrail use attorneys in conducting the grievance process.

On May 29, 1996, Chairman Santoro informed Plaintiff by letter that his case was docketed for arbitration before Special Board of Adjustment ("SBA") No. 1083 on June 13, 1996 at Conrail's headquarters in Philadelphia. The letter instructed Barton to contact Goffredo if he wished to attend the arbitration hearing. In response to Santoro's letter, a fax under David Barton's name was sent to Goffredo on April 25, 1996. The fax outlined issues to be raised at arbitration, but importantly contained no arguments or information that had not previously been raised at the investigatory hearing or on appeal.

As authorized by CBA Rule 43(e), SBA No. 1083 was established pursuant to a December 22, 1995 agreement between Conrail and System Board 86. The agreement called for a three member arbitration board consisting of one member selected by Conrail (A.J.Licate), one member selected by TCU (Goffredo), and a neutral member selected jointly by Conrail and TCU to serve as SBA Chairman (James M. Harkless).

The arbitration hearing was held as scheduled on June 13, 1996, at which Barton was provided and exercised an opportunity to speak. In an award dated March 11, 1997, Arbitrators Harkless and Licate upheld the discharge on the grounds that on the facts presented it was reasonable for Conrail to conclude that Barton intentionally took the pager and gave it to his son, and that the infraction was serious enough to warrant dismissal.[8] Goffredo dissented on procedural grounds, arguing that the investigation was void from the outset due to Conrail's failure to hold the original investigatory hearing within the day period proscribed by CBA Rule 42(a).

On September 10, 1997, Plaintiff filed a hybrid duty of fair representation and breach of contract action under the RLA against TCU and Conrail, respectively. On May 28, 1998, Conrail filed the instant motion for judgment on the pleadings or, in the alternative, summary judgment. TCU subsequently filed its pending motion for summary judgment on May 29, 1998.

### III. *Legal Analysis*

#### A. *Standards Applicable to Motions for Summary Judgment*

Summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[9] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

[Goffredo Affidavit, ¶ 3]. In the present case, it is not clear on the facts presented whether district officer Krempec or someone from the System Board handled the second appeal. In any event, the second appeal was timely filed in accordance with CBA Rule 43(d).

**8.** In reaching its decision the SBA relied on the record of the case including the June 28, 1995 investigative hearing, the July 10, 1995 decision terminating Barton, and the appeal therefrom. Specifically, the SBA found that Barton's accounting lacked credibility in light of his failure to inform Supervisor Taylor when first asked that he had found a pager in his truck, and the fact that he only admitted having the pager after learning that his son's friend had reported to Conrail that he found the pager in his son's truck.

**9.** "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). *See also, Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994). The Court will apply the foregoing standards in deciding Defendants' Motions for Summary Judgment in this case.

**10.** It is not clear on the face of the rule whether the ten day period commences to run on the

### B. *The Court Lacks Jurisdiction to Review the Arbitration Board's Finding that Conrail Complied with Time Limits Proscribed by CBA Rule 42(a)*

As an initial matter, the Court addresses Plaintiff's claim that this Court has jurisdiction to review the arbitration board's decision that Conrail complied with the ten day period for commencing an investigation under CBA Rule 42(a). Rule 42(a) ambiguously provides that an "investigation shall begin within ten (10) calendar days of the date when charged with the offense or held from service." [10] Specifically, Plaintiff contends that because he was held from service prior to his shift on June 5, 1995, he was effectively terminated on June 4, 1995, eleven days prior to the scheduled investigatory hearing date of June 15, 1995. Pursuant to CBA Rule 42(g), Plaintiff argues that the failure to comply with the Rule 42(a) time limit renders the charges and discipline against him null and void.

The Court first notes that the scope of its review is dictated by whether the interpretation of Rule 42(a) involves a "minor" or "major" dispute under the RLA. The Sixth Circuit has defined a "minor dispute" as follows:

> Minor disputes involve the interpretation or application of particular provisions of existing collective bargaining agreements. *45 U.S.C. § 153 First (i) (1988); Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945)* .... The distinguishing feature of a minor dispute is that it can be 'conclusively resolved by interpretation of the existing agreement' between the parties. *Consolidated Rail v. Railway Labor Executives' Ass'n, 491 U.S. 299, 305 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989).*

*United Transportation Union v. Cuyahoga Valley Railway Company*, 979 F.2d 431, 434 (6th Cir.1992). In accordance with this definition, the Court finds that Plaintiff's claim regarding the proper interpretation of CBA Rule 42(a) involves a "minor dispute" under the RLA.

earlier or later of the date when charged with the offense or held from service.

■ Decisions of an arbitration board with respect to minor disputes are subject to extremely limited judicial review. *Cuyahoga,* 979 F.2d at 435. Pursuant to the RLA, the review by a United States District Court is limited to three specific grounds: (1) failure of the arbitration board to comply with the provisions of the RLA; (2) failure of the arbitration board to conform, or confine itself, to matters within the scope of the Board's jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153 First (q).

■ In the present case, Plaintiff does not specifically allege any of the three basis for review. Moreover, the undisputed facts establish that Plaintiff was provided ample opportunity to raise his procedural objection before SBA No. 1083, which considered and rejected the argument by a 2 to 1 vote. Although the Court recognizes the ambiguity of the ten day rule, it is not in a position to relitigate an issue that was fully developed and argued before the arbitration board.[11] Accordingly, the Court finds that it does not have jurisdiction under the RLA to review the "minor dispute" involving whether Conrail complied with the ten day time limit of CBA Rule 42(a).

### C. *Plaintiff's Duty of Fair Representation Claim Against TCU*

#### 1. *Applicable Law*

Although the courts owe great deference to the dispute resolution mechanisms chosen by the parties to a labor dispute, courts may intervene when a union has failed to adequately represent an employee. It is firmly established that TCU, as the exclusive bargaining representative for Conrail employees at the Wayne Auto Terminal, was under a statutory duty to fairly represent Plaintiff in the grievance and arbitration proceedings

with Conrail. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–910, 17 L.Ed.2d 842 (1967).

■ While the duty of fair representation affords union members such as Plaintiff a certain degree of protection, a union only breaches its statutory duty when its conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Intern. v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916.

■ A union's conduct rises to the level of arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1130 (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). Likewise, a plaintiff must provide "substantial evidence of fraud, deceitful action or dishonest conduct" to establish that a Union acted in bad faith. *Amalgamated Ass'n of Street, Electric Railway and Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971).

■ In order to recover on a duty of fair representation claim, however, a plaintiff must do more than establish that a union engaged in arbitrary, discriminatory, or bad faith conduct. Specifically, a plaintiff must also demonstrate "that the Union's actions tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." *Dushaw v. Roadway Express, Inc.,* 66 F.3d 129, 132 (6th Cir.1995); *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 585 (6th Cir.1994). Thus, taken as a whole, the applicable legal standards reveal

---

11. The Court also notes that even if it had jurisdiction to review SBA No. 1083's interpretation of CBA Rule 42(a), the record supports the arbitration panel's decision. Although it occurred prior to his shift, Plaintiff was actually held from service on June 5, 1995. Thus, he presumably worked up to and including June 4, 1995. Given these facts, the arbitration panel could fairly designate June 5, 1995 as the day Plaintiff was held from service. Conrail scheduled the investigatory hearing ten days later on June 15, 1995, within the time limit set forth in Rule 42(a) (although the hearing was adjourned to June 28, 1995 at the request of Plaintiff's union representative). The Court further notes that the investigatory hearing was scheduled only six days after Plaintiff was formally charged with the offense on June 9, 1995. If Rule 42(a) is interpreted to require a hearing within 10 days of the later of the date when charged or held from service, Conrail easily complied with the Rule 42(a) time limit.

that in order for Barton to prevail against TCU on his duty of fair representation claim, he faces the onerous burden of showing both that (1) TCU's handling of his grievance was arbitrary, discriminatory, or in bad faith; and (2) TCU's breach more than likely affected the outcome of the the grievance procedure.

### 2. *TCU Did Not Breach its Duty of Fair Representation by Failing to Request a Full Adversarial Hearing Under 45 U.S.C. § 157*

Turning to the present case, Plaintiff contends that TCU breached its duty of fair representation by failing to request a full adversarial hearing before an arbitration board as required under the RLA, 45 U.S.C. § 157.[12] In response, Defendant argues that Plaintiff's reliance on 45 U.S.C. § 157 is misplaced because that section of the RLA governs the arbitration of interest disputes—disputes that arise in negotiating collective bargaining agreements—while Section 153 governs employee grievances such as Plaintiff's claim. *See, Anderson v. National Railroad Passenger Corp.*, 754 F.2d 202, 205 n. 4 (7th Cir.1984).

■ In order to resolve Plaintiff's fair representation claim, however, it is not necessary for the Court to determine the applicability of 45 U.S.C. § 157 to the present case. Even assuming, arguendo, that Section 157 applies to the case at hand, the express language of the statute reveals that Section 157 arbitration boards are not the exclusive mechanism for dispute resolution under the RLA. Section 157 First provides:

> Whenever a controversy shall arise between a carrier or carriers and its or their employees **which is not settled either in conference between representatives of the parties or by the appropriate adjustment board or through mediation, in the manner provided in sections 151 to 156 of this title,** such controversy may, by agreement of the parties to such controversy, be submitted to the arbitration of a board of three (or, if the parties to the controversy so stipulate, of six) persons.

45 U.S.C. § 157 First (emphasis added). Thus, while plaintiff correctly asserts that Section 157 requires a "full and fair hearing," he fails to recognize that the RLA does not mandate arbitration under this section. Alternatively, the parties to a collective bargaining agreement may elect to resolve disputes "in the manner provided in sections 151 to 156 of this title."

An analysis of Sections 151 to 156 reveals that Section 153 provides for arbitration before the National Railroad Adjustment Board or another special board as agreed to by the parties:

**First. Establishment; composition; powers and duties; divisions; hearings and awards; judicial review**

> (i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances ...shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

> \* \* \* \* \* \*

**Second. System, group, or regional boards: establishment by voluntary agreement; special adjustment boards: establishment, composition, designation of representatives by Mediation Board, neutral member** . . .

> Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group or regional boards of adjustment for the purpose of

---

**12.** Boards of arbitration established pursuant to Section 157 are bound to give the parties to the controversy a "full and fair hearing." 45 U.S.C. § 157 Third (b).

adjusting and deciding disputes of the character specified in this section.

45 U.S.C. § 153 First (i), Second.

Thus, in point of fact, there are three types of arbitral tribunals authorized to make binding decisions under the RLA: (1) divisions of the National Railroad Adjustment Board under 45 U.S.C. § 153 First; (2) special adjustment boards under 45 U.S.C. § 153 Second; and (3) the arbitration boards under 45 U.S.C. § 157. Whether or not Section 157 applies to the case at hand, a union satisfies the requirements of the RLA if it processes an employee grievance in a fashion consistent with 45 U.S.C. § 153.

Returning to the case at hand, the undisputed facts establish that the procedures set forth in CBA Rules 42 and 43 for handling employee grievances are entirely consistent with 45 U.S.C. § 153, and that TCU vigorously pursued Plaintiff's rights under these provisions. Plaintiff was afforded an investigatory hearing, with union representation, in accordance with Rule 42. At the hearing, Plaintiff exercised his rights under Rule 42 to call and cross-examine witnesses and to make a final statement. Following the ruling dismissing Plaintiff from employment, the union made timely appeals first to Conrail's Manager of Labor Relations under Rule 43(a), and subsequently to Conrail's Director of Labor Relations under Rule 43(d). Thus, prior to the arbitration before SBA No. 1083, the handling of Plaintiff's grievance unquestionably complied with the CBA.

The arbitration of plaintiff's grievance before SBA No. 1083 also complied with the CBA and 45 U.S.C. § 153. Pursuant to CBA Rule 43(d), an appeal denied by Conrail's Senior Director of Labor Relations is considered closed unless "within one (1) year from the date of the decision ... proceedings are instituted before the National Railroad Adjustment Board **or such other Board as may be legally substituted therefore under the Railway Labor Act.**" As specifically authorized by the RLA, 45 U.S.C. § 153 Sec-

ond, Conrail and TCU entered into an agreement on December 22, 1995 that called for arbitration of employee grievances before SBA No. 1083. Pursuant to this agreement, Plaintiff received an arbitration hearing before SBA No. 1083 on June 13.

In sum, the RLA placed no obligation on TCU to request a full adversarial hearing for Plaintiff's grievance under 45 U.S.C. § 157. Furthermore, the record is devoid of any evidence from which the Court could construe that TCU processed Plaintiff's grievance in an arbitrary, discriminatory, or bad faith manner. In point of fact, TCU strictly complied with the requirements of both the RLA and the collective bargaining agreement. Accordingly, TCU is entitled to summary judgment on Plaintiff's claim that the union breached its duty of fair representation by failing to request a full adversarial hearing

### 3. *The Additional Allegations in Plaintiff's Complaint are Groundless*

The record also contains no evidentiary support for the following duty of fair representation claims raised by Plaintiff in his September 10, 1997 Complaint:

The Defendant Union failed to represent the Plaintiff through its failure to contact and provide sufficient rebuttal testimony, failure to prepare the Plaintiff for testimony, failure to have attorney representation, failure to present evidence at the arbitration other than evidence which was previously adduced in the Company's investigation, failure to present favorable evidence concerning the Plaintiff's long and favorable work history with the employer and failed to present an adequate contractual basis for the Plaintiff's termination.

[Complaint, ¶ 27]. Plaintiff failed to discuss or offer any evidence to support these claims in his June 22, 1998 Answer to TCU's Motion for Summary Judgment or at oral argument. Nonetheless, the Court will address each allegation in order.[13]

---

13. The Court does not address Plaintiff's final allegation in the Complaint that TCU breached its duty of fair representation by failing to present an adequate contractual basis for the Plaintiff's discharge. Conrail, rather than TCU, was

under an obligation to demonstrate that Plaintiff was discharged for just cause. In light of this fact, it appears that Plaintiff mistakenly included this allegation in its claim against TCU.

### a. TCU's Alleged Failure to Contact and Provide Sufficient Rebuttal Testimony

Plaintiff claims that TCU should have called his co-workers Nancy Daniel, Dennis Slazur, and Charlie Dale to testify at the investigatory hearing. [Barton Deposition, p. 142]. The record contains no evidence, however, to support a conclusion that TCU's decision not to call Daniel, Slazur, or Dale was arbitrary, or that the failure of these witnesses to testify even minimally affected the outcome of Plaintiff's grievance.

■ In his April 1, 1998 deposition, Plaintiff was unable to identify what, if any, relevant evidence Daniel, Slazur, and Dale possessed. [Barton Dep., pp. 142–145]. In point of fact, Plaintiff personally asked all three co-workers to appear at the hearing, but they failed to do so. [Barton Dep., p. 147]. Furthermore, when given the opportunity to speak on his own behalf at the investigatory hearing, Plaintiff failed to argue that additional witnesses were needed. [Barton Dep., p. 149]. The Sixth Circuit has held that a union does not breach its duty of fair representation by failing to present evidence where the grievant is afforded the same opportunity to offer that evidence but fails to do so. *Dushaw*, 66 F.3d at 133. Simply stated, there is no evidence supporting Plaintiff's claim that TCU failed to provide sufficient rebuttal testimony.

### b. TCU's Alleged Failure to Prepare Barton for Testimony

■ Similarly, Plaintiff's claim that TCU failed to prepare him for testimony is wholly without merit. In his deposition, Plaintiff admitted to meeting with Krempec and Reavis "a couple times" prior to the investigatory hearing. [Barton Dep., p. 60]. In addition, Plaintiff's ability to actively participate at the hearing—by testifying, calling and cross-examining witnesses, and making a closing statement—belies his argument that TCU failed to adequately prepare him for the investigatory hearing. Most importantly, Plaintiff has offered no evidence that a lack of preparation affected the outcome of his grievance.

### c. TCU's Failure to Provide Attorney Representation

It is firmly established in the Sixth Circuit that a union's failure to provide attorney representation during grievance and arbitration proceedings does not violate the duty of fair representation. *Allen v. Allied Plant Maintenance Co. of Tennessee*, 636 F.Supp. 1090 (M.D.Tenn.1986), *aff'd*, 881 F.2d 291 (6th cir.1989); *Bruno v. United Steelworkers of America*, 784 F.Supp. 1286 (N.D.Ohio 1992), *aff'd without opinion*, 983 F.2d 1065 (6th Cir.1993).

■ Moreover, TCU's decision not to provide an attorney in the present case complied with the Union's standard procedure for handling employee grievances. In a sworn affidavit submitted to the Court, Vice General of System Board 86 Victor Goffredo, stated:

> Grievances progressed by System Board 86 on behalf of its members are handled by TCU district officers at the investigatory state and through the first, on-property appeal. The second appeal and arbitration of such grievances are handled by officers and employees of the System Board like myself. **Neither the Union not Conrail use attorneys in conducting the grievance process.**

[Goffredo Affidavit, ¶ 3]. Even assuming that TCU should have provided an attorney, the record contains no evidence that the failure to provide attorney representation affected the outcome of Plaintiff's grievance.

### d. TCU's Failure to Supplement the Arbitration Record

The record simply does not support Plaintiff's claim that TCU failed to adequately supplement the arbitration record. When asked at his April 1, 1998 deposition, Plaintiff could not offer any specific suggestions as to how TCU should have supplemented the record relied on by the arbitration panel. [Barton Dep., pp. 151]. Moreover, a fax was sent to Goffredo on April 25, 1996 indicating the issues Plaintiff wanted raised on appeal. All of the issues raised by the fax had previously been proffered at the investigatory level. Finally, Plaintiff exercised his right to speak

before the arbitration panel, but can no longer recall anything he said. [Barton Dep., p. 94]. *See, Dushaw,* 66 F.3d at 133.

#### e. *TCU's Alleged Failure to Present Evidence Regarding Plaintiff's Long and "Favorable" Work History with Conrail*

 Once again the record belies Plaintiff's claim. Evidence of Plaintiff's 25 year work history was presented at both the investigatory hearing and the arbitration. Specifically, both Plaintiff and Krempec argued that it was ridiculous to suppose that he would jeopardize a 25–year career to steal a $25 pager. Furthermore, in representing a grievant, a Union has discretion within "a wide range of reasonableness" as to which arguments to raise in order to best represent its member. *O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1130. In light of Plaintiff's history of disciplinary problems, TCU's decision not to present further evidence as to Plaintiff's "favorable" work history seems eminently reasonable.

In any event, the failure to provide additional evidence regarding Plaintiff's work history clearly did not affect the outcome before SBA 1083. In rendering its decision, the arbitration panel stated, "Claimant's infraction was extremely serious. Consequently, *despite his long service,* Carrier was justified in assessing discipline against him of 'Dismissal in all capacities.'" Thus, the arbitration board was well aware of Barton's years of service for Conrail, but still upheld his discharge.

In sum, rather than supporting Plaintiff's allegations in the Complaint, the record unequivocally establishes that TCU aggressively pursued Plaintiff's grievance through an investigatory hearing, two internal appeals, and an arbitration proceeding. Plaintiff has offered absolutely no credible evidence that TCU engaged in arbitrary, discriminatory, or bad faith conduct, or that any act or omission on the part of TCU affected the outcome of the grievance process. Accordingly, the Court finds that TCU is entitled to summary judgment on all of Plaintiff's duty of fair representation claims.

#### D. *Plaintiff's Breach of Contract Claims Against Conrail*

##### 1. *The Failure of Plaintiff's Duty of Fair Representation Claims Against TCU Preclude a Breach of Contract Action against Conrail*

As indicated above, Plaintiff filed a "hybrid claim"—a claim against the union for breach of its duty of fair representation and a claim against the employer for breach of the collective bargaining agreement—against Defendants TCU and Conrail, respectively. Within the context of claims brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the Supreme Court and Sixth Circuit have consistently held that in order to recover on a hybrid claim, the plaintiff must establish both a breach of the duty of fair representation and a breach of the collective bargaining agreement. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–165, 103 S.Ct. 2281, 2290–2291, 76 L.Ed.2d 476 (1983); *Dushaw,* 66 F.3d at 132; *Black v. Ryder/P.I.E. Nationwide, Inc.,* 930 F.2d 505, 510 (6th Cir.1991) ("In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement").

In *Chauffeurs,* the Supreme Court explained the interdependence of hybrid claims as follows:

Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance. Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agree-

ment and that the union breached its duty of fair representation.

494 U.S. at 564, 110 S.Ct. at 1344 (internal citations omitted).[14]

■ The Court finds the Supreme Court's logic in *Chauffeurs* equally applicable to a hybrid claim brought pursuant to the Railway Labor Act. Accordingly, because the Court finds that Defendant TCU is entitled to summary judgment on Plaintiff's duty of fair representation claims, Plaintiff's claim against Conrail for breach of the CBA fails as a matter of law.

### 2. In Any Event, Plaintiff's Breach of Contract Claims Lack Merit

Even assuming that Plaintiff's claim against Conrail is not barred, the record does not support Plaintiff's breach of contract claims. Specifically, Plaintiff alleges: (1) that Conrail failed to comply with the ten day rule for holding an investigatory hearing under CBA Rule 42(a); (2) that Plaintiff was not afforded the full adversarial hearing and due process envisioned by the RLA and the CBA; and (3) that the discipline imposed against Plaintiff was entirely disproportionate to the alleged violation.

As discussed above, this Court lacks jurisdiction to review the arbitration panel's decision that Conrail complied with CBA Rule 42(a).[15] Moreover, Plaintiff's claim that Conrail did not afford him the full adversarial hearing and due process envisioned by the RLA and the CBA is groundless. The analysis of Plaintiff's duty of fair representation claim reveals that the investigation and grievance were processed in a fashion entirely consistent with the RLA and the CBA.

Finally, the arbitration panel's findings specifically refute Plaintiff's claim that the discipline of dismissal was entirely disproportionate to the alleged offense. In particular, SBA No. 1083 found that Plaintiff's explanation regarding the pager lacked credibility, that the infraction was "extremely serious," and that despite Plaintiff's long service, Conrail was "justified in assessing discipline against him of Dismissal in all capacities."

Accordingly, even assuming that Plaintiff's breach of contract claims are not precluded as a matter of law, the Court finds that Conrail is entitled to summary judgment on all of Plaintiff's breach of contract claims.

## IV. Conclusion

For all of the aforementioned reasons:

IT IS HEREBY ORDERED that Defendant Transportation Communications International Union's Motion for Summary Judgment is GRANTED

IT IS FURTHER ORDERED that Defendant Consolidated Rail Corporation's Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment is GRANTED. Accordingly,

IT IS FUTHER ORDERED that this case is DISMISSED in its entirety, with prejudice.

---

14. Similarly, in *DelCostello* the Supreme Court explained:

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other;

but the case he must prove is the same whether he sues one, the other, or both. The suits is thus not a straightforward breach-of-contract suit under § 301 ... but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].

462 U.S. at 164–165, 103 S.Ct. at 2290–2291 (internal citations omitted).

15. As noted above, even assuming the Court had jurisdiction to review the arbitration panel's decision, the Court finds that the panel fairly interpreted the ambiguous provisions of CBA Rule 42(a).