**PROFESSIONAL ADMINISTRATORS LIMITED, Successors in interest to the Southern Labor Union Welfare Fund; and A.R. Blevins, Gary N. Begley, and Jim Polly, Successor Trustees of the Southern Labor Union Pension Fund, Plaintiffs-Appellees,**

v.

**KOPPER–GLO FUEL, INC., and Double Q, Inc., Defendants-Appellants.**

No. 86–5556.

United States Court of Appeals, Sixth Circuit.

Argued March 26, 1987.

Decided May 26, 1987.

Rehearing and Rehearing En Banc Denied July 28, 1987.

William H. Goddard (argued), Dandridge, Tenn., for defendants-appellants.

John A. Lucas, Hunton & Williams, Knoxville, Tenn., Patricia Lane McNutt, for Kopper-Glo Fuel.

Thomas W. Phillips (argued), Phillips and Wilson, Oneida, Tenn., for plaintiffs-appellees.

Before KENNEDY, RYAN and NORRIS, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Defendants-appellants Kopper-Glo Fuel, Inc. and Double Q, Inc. ("appellants") appeal the District Court's order granting summary judgment and confirming an arbitration award in favor of plaintiffs-appellees Professional Administrators Limited, *et al.* ("the Trustees"). The District Court held that appellants were estopped from raising their defenses because they had failed to move timely to vacate the arbitration award. Appellants claim on appeal that the Court erred in referring the case to arbitration, that they were not estopped from challenging the award on its merits, and that the District Court erred in affirming the arbitrator's decision. We find that the arbitration award permitting trustees of pension and welfare funds to increase contribution rates is contrary to public policy that requires wages and benefits to be collectively bargained and is therefore unenforceable. We reverse the District Court decision confirming the award.

Kopper-Glo Fuel, Inc. ("Kopper-Glo") is a corporation in the business of operating a coal tipple. Double Q, Inc. ("Double Q") is a corporation that mines and sells coal products. Appellants' employees are represented by the Southern Labor Union. Appellees are representatives of the Southern Labor Union Welfare Fund ("the Welfare Fund") and the Southern Labor Union Pension Fund ("the Pension Fund"), both of which were created and adopted pursuant to collective bargaining agreements between the Union and appellants. The 1976 collective bargaining agreements incorporated plan documents for the Welfare Fund and the Pension Fund. Amendment of the Welfare Fund was limited to amendments necessary to conform to the terms of Section 302(c) of the Labor-Management Relations Act, 1947 and amendments to the Pension Fund to those necessary to conform to requirements of the Internal Revenue Code or other applicable federal statutes. In order to comply with the then new Employee Retirement Income Security Act, the 1979 and 1980 agreements exclud-

ed the plans and they were published as separate documents. The contribution rates, which are a stated amount per ton of coal produced, remained subjects for negotiation and were specified in the agreements.

The plan for the Welfare Fund, amended and restated effective August of 1977, stated that employer contributions would be in an amount "to be negotiated between the contracting parties." Welfare Plan, Jt. Exh. 10, at 2. It also provided that minimum and maximum payments would be based on an actuarial computation per man per month. *Id.* at 12. Finally, the plan provided for amendment by two-thirds vote of the Board of Trustees. *Id.* at 13. The plan document for the Pension Fund, amended and restated effective October of 1976, also provided for contributions as required by the collective bargaining agreement. It further provided that the Trustees "shall develop and maintain a policy for funding the benefits of the Plan" and that the Trustees "reserve the right at any time to amend, modify or terminate the Plan at any time for any reason." Pension Plan, Jt. Exh. 9, §§ 12.03, 13.01.

On August 30, 1980, the Trustees adopted a resolution increasing the Pension Fund contribution rate from 20 cents per ton of coal to 30 cents per ton and the Welfare Fund rate from 60 cents per ton to 85 cents. The Trustees also increased the minimum Welfare Fund contribution rate from $90.00 to $105.00 per man per month, and the maximum rate from $175.00 to $190.00. The decision to increase the contributions was based on two valuation reports prepared by the Funds' actuary. The Trustees additionally passed a resolution amending section 12.03 of the pension plan and the second paragraph of page twelve of the welfare plan to provide specific authority for the Trustees to increase the contribution rates. A copy of each of these resolutions was sent to the participating employers to notify them of the change in the amounts they would be paying. Kopper-Glo and Double Q, as well as a nonap-

pealing party, Gatliff Coal, refused to pay the additional amount in contributions and instead continued to pay the amount specified in their 1979 and 1980 collective bargaining agreements.

In December of 1980, the resolutions passed by the Board of Trustees were incorporated into the welfare and pension plans. The pension plan document stated that the contributions could be increased by a vote of the Trustees if the Board found that an increase was actuarially necessary to fund the Fund. The welfare plan document provided the same. The pension plan document also contained an arbitration clause that provided for arbitration of "[a]ny dispute, controversy or claim arising out of or relating to the application of this." Pension Plan, Jt. Exh. 4, § 12.12. The welfare plan did not contain an arbitration clause.

The Trustees of the Funds filed suit in the United States District Court for the Eastern District of Tennessee to recover that they alleged were delinquent contributions.[1] The complaint against Kopper-Glo sought recovery of contributions to the Welfare Fund in the amount of $2,940.00, and the complaint against Double Q sought recovery of contributions of $14,581.44 to the Welfare Fund and $24,118.89 to the Pension Fund. Kopper-Glo and Double Q moved for summary judgment, claiming that the Trustees lacked the authority to unilaterally increase the contribution rates. The rates, they contended, had to be collectively bargained. At a pre-trial conference conducted by the District Court judge, defendant Gatliff Coal (no longer a party) apparently suggested that the cases might be subject to arbitration pursuant to section 12.12 of the pension plan. Although the Trustees had not sought arbitration, and in fact seemed to suggest that the arbitration clause did not apply to these cases, the District Court ordered that the cases be submitted to arbitration. The Court cited section 12.12 and interpreted the word "this" to apply to section 12.03,

---

1. The original defendants were Kopper-Glo, Double Q, and Gatliff Coal. Gatliff Coal is not a party to this appeal.

which granted the Trustees authority to increase the contribution rates. The welfare plan did not have an arbitration clause, but the Court viewed the two plans *in pari materia* and submitted both claims to arbitration. Appellants moved to modify the order so that they could seek interlocutory appeal and the Court denied this motion.

Arbitration hearings were held in October and December of 1983. In October of 1984, the arbitrator rendered a decision and award in favor of the Trustees. The arbitrator found that he had jurisdiction to resolve the dispute, that the claim of the Trustees was arbitrable on the merits, and that the Trustees had authority to increase the contribution rates beyond those set in the 1979 and 1980 collective bargaining agreements. He declined to rule on the question of actuarial justification for the Trustees' action. Appellants filed a motion for reconsideration on November 19, 1984. The motion was denied on July 10, 1985. The Trustees demanded payment of the delinquent contributions, but appellants refused to comply with the arbitration award. On September 22, 1985, the Trustees filed a motion to confirm and enforce the arbitration award. Appellants answered the petition on October 15, 1985. The Trustees then filed a motion for summary judgment and oral arguments were heard on April 25, 1986.

The District Court granted the Trustees' motion and confirmed the arbitration award. The Court agreed with the argument of the Trustees that appellants were "attempting to defend against enforcement by raising grounds which might have been grounds for vacating the arbitrator's award but are now time-barred." District Court Opinion at 2 (citing *Service Employees Int'l Union, Local 36 v. Office Center Serv., Inc.,* 670 F.2d 404 (3d Cir.1982)).[2] The Court nevertheless considered the arguments raised by appellants. It found that the original decision that the cases should be arbitrated was correct. *Id.* It also found the arbitration award appropri-

ate on its merits. *Id.* at 3. The Court granted judgment in favor of the Trustees and ordered damages in the amounts originally requested. It also granted the Trustees costs and attorneys fees in the amount of $3,000.00. Appellants appeal this judgment.

▪ Appellants claim on appeal that the claims should not have been submitted to arbitration, that the arbitrator's award was improper on the merits, that the arbitrator should have considered the actuarial justification for the Trustees' actions, and that an award that permits the trustees to increase contributions violates federal labor policy. We hold that appellants cannot raise these defenses because they failed to move to vacate the arbitration award. Several courts of appeals have held that "if a defendant has important defenses to an arbitration award he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding." *Service Employees Int'l Union, Local 36 v. Office Center Serv., Inc.,* 670 F.2d 404, 412 (3d Cir.1982). *See also Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 175–77 (2d Cir. 1984); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1024 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). The reasons for denying the defendant's assertions of defenses are based on the purpose of arbitration. Arbitration is meant to be a quick and final resolution by which parties are bound. Moreover, an action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief. Appellants also assert that the award cannot be enforced because it violates federal labor policy in that it increases wages, that is the amount paid employees or on their behalf, without collective bargaining. *Florasynth,* 750 F.2d at 176–77.

---

**2.** The applicable statute of limitations of three months appears in Tenn.Code Ann. § 29–5–313

(Supp.1986).

We agree with appellants that an arbitration award contrary to public policy is unenforceable. *See W.R. Grace & Co. v. Local 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (holding that courts may not enforce an agreement that is contrary to "well defined and dominant" public policy). We turn then to whether this award violates federal labor policy.

Section 301 of the Labor Management Relations Act establishes the mutual obligation of employers and labor organizations to bargain collectively. 29 U.S.C. § 158.[3] Collective bargaining is mandatory as to "wages, hours, and other terms and conditions of employment." *Id.* at § 158(d). Fringe benefits are a component of wages, and thus "[i]t is ... well established that contributions to a health, welfare and pension fund constitute mandatory subjects of collective bargaining." *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 357 (5th Cir.1981). *Accord American Distr. Co. v. NLRB*, 715 F.2d 446, 449 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); *Hinson v. NLRB*, 428 F.2d 133, 137 (8th Cir.1970). The Trustees of the Southern Union Pension and Welfare Funds amended the plan documents to authorize themselves to unilaterally increase the pension and welfare plan contribution rates over those specified in the collective bargaining agreements. The effect of such increase is to increase the employees' wages without resorting to the collective bargaining process. We find this, even if agreed to by appellants, to be contrary to national labor policy.

In *NLRB v. Amax Coal Co.*, the United States Supreme Court addressed the question whether the management-appointed trustee of a pension fund was a "representative" of the employer for purposes of Section 8(b)(1)(B) of the National Labor Relations Act.[4] 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981). The Court held that the trustees of the fund were not collective bargaining representatives of the employer. In so holding, it analyzed the nature of the trustee position and the fiduciary responsibilities of the trustee under section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* The Court stated that:

> The atmosphere in which employee benefit trust fund fiduciaries must operate, as mandated by § 302(c)(5) and ERISA, is wholly inconsistent with [the] process of compromise and economic pressure. The management-appointed and union-appointed trustees do not bargain with each other to set the terms of the employer-employee contract; they can neither require employer contributions not required by the original collectively bargained contract, nor compromise the claims of the union or the employer with regard to the latter's contributions. Rather, the trustees operate under a detailed written agreement, 29 U.S.C. § 186(c)(5)(B), which is itself the product of bargaining.

*Amax*, 453 U.S. at 336, 101 S.Ct. at 2797–98.[5] The Court found that federal labor policy demanded that the trustees operate independently of the collective bargaining process and that matters of administration

---

3. "The obligation of collective bargaining is the core of the Act, and the primary means fashioned by Congress for securing industrial peace." *International Union of Elec. Workers v. NLRB*, 426 F.2d 1243, 1249 (D.C.Cir.) (citing *NLRB v. American Nat'l Ins. Co.*, 343 U.S. 395, 404, 72 S.Ct. 824, 829, 96 L.Ed. 1027 (1952)), *cert. denied*, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970).

4. Section 8(b)(1)(B) makes it an unfair labor practice to "restrain or coerce ... an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances." 29 U.S.C. § 158(b)(1)(B).

5. The Court noted in a footnote that "[t]he sole and minor exception under the agreement governing the national trust funds in this litigation is the authority of the trustees to fix the number of cents per ton of salvage coal produced which a mine operator must contribute to the funds." *Amax*, at 336 n. 20, 101 S.Ct. at 2798 n. 20. We recognize that this note is contrary to the Court's language in the text of the opinion. The question whether trustees may unilaterally increase contribution rates, however, was not before the Court in *Amax*.

of the trust fund not be "collectively bargained." It reasoned that "[i]f the administration of § 302(c)(5) trust funds were 'collective bargaining' within the meaning of federal labor law, ... the NLRB would have to review the discretionary actions of the trustees according to the statutory duty of good-faith bargaining." *Id.*, at 337 n. 21, 101 S.Ct. at 2798 n. 21. The Board would then be "thrust 'into a new area of regulation which Congress [has] not committed to it.'" *Id.* (quoting *NLRB v. Insurance Agents' Int'l Union*, 361 U.S. 477, 499, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960)). Furthermore, "a trustee would be subject to simultaneous regulation by the Board, the Secretary of Labor, and the courts, and might be torn between conflicting duties imposed by the National Labor Relations Act and ERISA." *Id.*

We find the *Amax* Court's analysis of the underlying federal policy concerns to be dispositive. The fiduciary responsibilities of trustees potentially conflict with the requirements of collective bargaining. Trustees are therefore not in a position to participate in the collective bargaining process. We agree with the court of appeals that cited *Amax* as authority for the proposition that "fund trustees have no power to resolve issues that are properly the subject of collective bargaining." *Hauskins v. Stratton*, 721 F.2d 535, 537 (5th Cir.1983). *See also Hawkins v. Bennett*, 704 F.2d 1157, 1159 (9th Cir.1983) ("the [collective bargaining agreement] fixes the employer's contribution to the fund"). The amounts to be contributed by an employer to a trust fund are a matter for collective bargaining. "[T]he question of public policy is ultimately one for resolution by the courts," *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183, and we find that an award approving a unilateral increase in contribution rates is contrary to federal labor policy underlying mandatory collective bargaining. We therefore reverse the District Court decision and vacate the arbitration award. The action is remanded to the District Court with directions to dismiss plaintiffs' complaint.