**UNITED STEELWORKERS OF AMERICA, Plaintiff,**

v.

**ROEMER INDUSTRIES, Defendant.**

No. 4:98CV1428.

United States District Court,
N.D. Ohio,
Eastern Division.

July 6, 1999.

Michael Ernest Jackson, Mark A. Rock, Schwarzwald & Rock, Cleveland, OH, for Plaintiff.

Michael J. Angelo, Jeffrey C. Miller, Johnson & Angelo, Cleveland, OH, Ronald James Rice, Hubbard, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

On June 19, 1998, United Steelworkers of America, AFL–CIO CLC ("the Steelworkers") filed the above-captioned action against Roemer Industries, inc. ("Roemer") seeking confirmation of a labor arbitration award rendered December 7, 1997, by Calvin Sharpe ("Arbitrator"). Jurisdiction is predicated upon § 301 of the Labor Management Relations Act ("LMRA").

On October 6, 1998, the Steelworkers filed a Motion for Summary Judgment (Dkt. No. 11). On October 23, 1998, Roemer filed a Cross–Motion for Summary Judgment (Dkt. No. 16). For the following reasons, the Steelworkers' motion is **GRANTED** and Roemer's motion is **DENIED**.

### FACTS

The litigants are parties to a 1993 collective bargaining agreement ("CBA") governing employer-employee labor relations and dispute resolution. On September 8, 1995, Roemer terminated employee Paul Kurelko for falsification of his time card. On September 11, 1995, Kurelko ("grievant") filed a grievance pursuant to the terms of the above-mentioned CBA. The parties were unable to settle their differences during the time period between the filing of the grievance and a subsequent arbitration hearing.

On August 12, 1997, an arbitration hearing was held to decide whether or not the termination violated the CBA, and if so, what is the appropriate remedy. Roemer asserted that it had just cause for Kurelko's discharge, and made four arguments in support: (1) company policy provided for discharge as a penalty for falsifying company documents since 1973; (2) Roemer did not have to produce Kurelko's supervisor to dispute the claim that the supervisor authorized Kurelko's timecard notation; (3) another employee, Ellison, testified that he would not falsify his start time, even if so instructed, suggests that no circumstances justify Kurelko's conduct; and (4) the delay in holding the arbitration hearing should bar any claim for relief. (Plaintiff's Motion, Exhibit A. at 5–6)

After the testimony of the Steelworkers' first witness, Roemer's representatives, led by Roemer's president, Joseph O'Toole, Jr., expressed their unwillingness to cross-examine any employee who testified for the Steelworkers and left the hearing. Roemer representatives also suggested that the hearing continue in their absence.

The hearing continued and the Steelworkers contended that Roemer had failed

to prove just cause. The Steelworkers' argue that Kurelko's supervisor authorized the notation on his time card is evidenced by (1) Ellison's testimony; (2) Roemer's refusal to interview Ellison at the suspension meeting; (3) the testimony of Kurelko's supervisor at an unemployment hearing; and (4) Roemer's failure to call the supervisor as a witness. The Steelworkers further argue that no time clocks or related policies existed prior to the discharge but were promulgated after the discharge.

As to the alleged altercation between Kurelko and O'Toole, the Steelworkers claimed no incident occurred and pointed to the absence of any police report. The Steelworkers also dispute the timeliness issue and argued any delays were the result of the company's move from Pennsylvania to Ohio, the reorganization of the union, and ongoing attempts to settle the dispute short of arbitration. The Steelworkers also argued that Roemer raised the timeliness issue for the first time at the hearing.

On December 5, 1997, the arbitrator concluded that the termination was unjust and upheld the grievance. He then awarded reinstatement with full back-pay, benefits, and seniority.

## STANDARD OF REVIEW

### A. Summary Judgment

FED.R.CIV.P. 56(c) governs summary judgment and provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

### B. Arbitration Reviews

"The standard of review in arbitration cases is very narrow." *Mercy Mem. Hospital v. Hospital Employees' Division of Local 779*, 23 F.3d 1080, 1083 (6th Cir.), cert. denied, 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 335 (1994)(quoting *Anaconda v. District Lodge No. 27, International Assn. Of Machinists*, 693 F.2d 35, 36 (6th Cir.1982)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ However, an arbitrator is confined to interpretation and application of the collective bargaining agreement and may not implement his own brand of industrial justice. When an arbitrator's words manifest a breach of this obligation, courts have no choice but to refuse enforcement of the award. *Id.* at 597, 80 S.Ct. 1358.

## ANALYSIS

### A. Roemer's Available Defenses

■ Roemer asks this Court to deny enforcement of the arbitration award for the reason that the arbitrator abused his powers and applied his own brand of justice. Roemer's request is the equivalent of a motion to vacate an arbitration award. In support of this request, Roemer argues that the arbitrator decided issues that were moot due to the Steelworkers' 19-month delay in submitting this matter to arbitration.[1]

The Steelworkers contend that Roemer's motion is untimely as the Sixth Circuit, in *Occidental Chemical v. Intern. Chemical Wkrs, Union,* 853 F.2d 1310 (6th Cir.1988), held that there is a three month statute of limitations period in which a party may file a motion to vacate an arbitrator's award.

Courts have generally held that because Congress provided no statute of limitations for suits under § 301, the timeliness of a § 301 suit is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. *United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *See also International Brotherhood of Electrical Workers, Local 969 v. Babcock & Wilcox,* 826 F.2d 962, 964 (10th Cir.1987). In Ohio, the appropriate state statute provides that motions to vacate an arbitration award must be served within three months after the award is delivered to the parties in interest. Ohio Rev. Code § 2711.13.[2]

In the case *sub judice,* the arbitrator rendered his decision on December 7, 1997. As such, Roemer had until March 7, 1998[3] to file an action in this Court to vacate the award.

Roemer argues that, although it immediately recognized that the arbitrator "illogically and improperly" decided that the matter was timely submitted to arbitration, it could not move to vacate the award "because the arbitrator's malfeasance was not a sufficient ground for a Motion to Vacate." (Def. Cross–Motion at 8). Roemer bases this argument on the Federal Arbitration Act (the "FAA") which enumerates the following grounds for a party to move to vacate an arbitration award:

1) Where the award was procured by corruption, fraud and undue means.

2) Where there was evident partiality or corruption in the arbitrators, or either of them.

> *parties in interest, as prescribed by law for service of notice of a motion* in an action. For the purposes of the motion, any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.
> (emphasis added)

---

1. Under the CBA, the Steelworkers had until 20 days after the grievance was filed to settle the matter. If the matter is not settled, the Steelworkers have ten additional working days in which to submit the matter to an arbitrator.

2. Ohio Rev. Code § 2711.13 provides:
   After an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code. *Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the*

3. This date does not factor in the amount of time it took for the award to be delivered to Roemer. Moreover, the exact date is not important since Roemer never moved to vacate the Arbitrator's award.

3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other behavior by which the rights of any party have been prejudiced.

4) Where the arbitrators exceeded their powers, or so imperfectly executed them at a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

Roemer contends that as they had no evidence of any of the aforementioned grounds, they did not have an avenue to challenge the award. Roemer further argues that its only alternative was to refuse to comply with the award until the Union brought it to judicial review.

■ Roemer's reliance upon the FAA is misplaced. It is well established that the FAA does not create any independent federal question jurisdiction. *American Federation of Television and Radio Artists, AFL–CIO v. WJBK–TV (New World Communications of Detroit, Inc.)*, 164 F.3d 1004 (6th Cir.1999); *See also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (the FAA creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 ... or otherwise."). The Supreme Court, in *United Paperworkers International v. Misco Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), stated that the FAA *does not apply* to collective bargaining agreements, but that federal courts often look to the Act for guidance in labor arbitration cases

brought under § 301. Accordingly, Roemer would have had to file the action pursuant to § 301 of the LMRA which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction over the parties." 29 U.S.C. § 185(a).

Likewise, a party seeking to confirm an arbitration award would have to bring an action pursuant to § 301, as did the Steelworkers in the instant case. Notably, in paragraph three of its Answer, Roemer admits that this action was properly filed under § 301 of the LMRA. As jurisdiction of this matter is found in § 301 and not in the FAA. Roemer is precluded by the statute of limitations from moving to vacate, correct, or modify the arbitrator's award in the case at bar.

Additionally, the Sixth Circuit has consistently held that "objections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired."*Occidental Chemical*, 853 F.2d at 1317 (*citing Professional Administrators, Ltd. v. Kopper–Glo Fuel, Inc.*, 819 F.2d 639 (6th Cir.1987)). The *Professional Administrators* court explained that the reasons for denying the defendant's assertions of defenses are based on the purpose of arbitration which is "meant to be a quick and final resolution by which parties are bound." 819 F.2d at 642 ("an action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief").[4] Therefore, Roemer is

---

**4.** Roemer cavalierly dismisses *Occidental Chemical* and *Professional Administrator* as "easily distinguished and defeated" without any legal support other than an impertinent discussion of the legislative intent of the FAA and the 1979 opinion of a District Court in Indiana. *See Chauffeurs, Teamsters, Ware-*

*housemen and Helpers v. Ruan Transport Corp.*, 473 F.Supp. 298 (N.D.Ind.1979). Roemer later states that decisions of the Second, Third, and Seventh Circuits which are in line with *Occidental Chemical* and *Professional Administrators* "cannot stand because

also precluded from raising defenses that it might have raised in a motion to vacate.

## B. Enforcement of the Award

■ Roemer concedes that "judicial review of arbitration awards on a motion to confirm is extremely narrow." (Def. Cross–Motion at 10). In fact, this Court is limited to examining whether the award violates public policy and whether the award "draws its essence" from the CBA. *See Beacon Journal v. Akron Newspaper Guild,* 114 F.3d 596 (6th Cir.1997). In *Beacon Journal,* the Sixth Circuit stated that an award fails to draw its essence from the agreement when:

(1) an award conflicts with express terms of the collective bargaining agreement;

(2) an award imposes additional requirements not expressly provided in the agreement;

(3) an award is not rationally supported by or derived from the agreement; or

(4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Id.* at 600. (citations omitted). This Court has previously held that when any one of the enumerated grounds are violated, the arbitration award must be vacated. *Federal Packaging Corp. v. United Paperworkers,* 940 F.Supp. 1155, 1158 (N.D.Ohio 1996).

■ When analyzed under these guidelines, it is clear that the arbitrator's award and decision was confined to interpretation and application of the CBA. At no time does the award conflict with any express term of the agreement. In fact, the agreement specifically states that an arbitrator can revoke a discharge of an employee who is unjustly discharged. (Plaintiff's Exhibit B, p. 3) [5] The Arbitrator found that Roemer failed to demonstrate that Kurelko intended to falsify his time card. In fact, the Arbitrator found that the evidence "points strongly" to the fact that Kurelko's supervisor "authorized" Kurelko to record his start time as 7:00 a.m. since he worked through his afternoon break to makeup for being late. (Plaintiff's Exhibit A, p. 10).

The Arbitrator also found that the Steelworkers' request for arbitration was timely filed. Although Roemer disagrees with this finding, the Arbitrator considered the four-step grievance procedure and the communications between the Steelworkers and Roemer in which they attempted to settle the grievance before it reached arbitration. Based upon these factors, the Arbitrator determined that Roemer had failed to prove that the request for arbitration was untimely filed.

Roemer argues that a physical altercation occurred between Kurelko and Roemer's President, Joseph O'Toole, and that this grievance procedure became moot as of the date of the altercation because Roemer refuses to hire Kurelko back under any circumstance. Although Roemer is estopped from raising this defense, this Court must examine whether there was any support in the record for the Arbitrator's decision on the issue.

While Roemer alleges that a police report was filed regarding the incident, they

...[they] are outside of the judiciary's powers."

As discussed *supra,* the Supreme Court, in *Misco,* held that the FAA offers nothing more than guidance in labor arbitration cases and cannot be used as a controlling source of law when in direct conflict with established labor law. Therefore, without more support, Roemer's arguments on this issue need not be discussed further as they are contrary to the controlling law in the Sixth Circuit.

**5.** Article IV of the CBA provides in pertinent part:

Should it be determined by the Company or by an arbitrator that the employee has been discharged or suspended unjustly, the Company shall reinstate the employee and pay full compensation at the employee's regular hourly rate of pay for the time lost; provided, however, that the Company and the Union may agree or the arbitrator decide that he is entitled to reinstatement with only a portion of pay for time lost, or without any compensation.

failed to produce any such evidence at the arbitration hearing. Kurelko testified that no such physical altercation ever occurred. Moreover, it is obvious from the Arbitrator's discussion that he considered O'Toole's allegations and then he concluded that "[b]ased on the state of the record, the Arbitrator is unable to find that the Grievant is entitled to less than a full remedy for this contractual violation."

Accordingly, it is readily apparent that the Arbitrator's award of reinstatement[6] "draws its essence" from the collective bargaining agreement and does not violate any public policy. Therefore, Plaintiff's motion to enforce the arbitration award is **GRANTED**.

## C. Prejudgment Interest

The Steelworkers also move for an award of prejudgment interest from December 5, 1997, the date of the Award, until the date that this Court issues its judgment. In support of their motion, the Steelworkers cite *Bricklayer's Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir.1982), which states that federal courts have discretion to award prejudgment interest in order to make an employee whole when an employer fails to comply with an arbitration award. "Unless the ... employer is required to restore his employee to the position he would have been in ... via an award of liquidated damages or interest on the back wage award, the employer will ... have been unjustly enriched by his own violation at his employee's expense." *EEOC v. Kentucky State Police Dept.*, 80 F.3d 1086, 1099 (6th Cir.1996)(*citing McClanahan v. Mathews*, 440 F.2d 320, 326 (6th Cir. 1971)).

It has been nearly 19 months since the Arbitrator's decision ruled that Kurelko was entitled to reinstatement. He has yet to be returned to his position or received any back wages. "Prejudgment interest ordinarily should apply to each year an employee lost the use of his/her wages." *Kentucky State Police,* 80 F.3d at 1099. Therefore, in order to make Kurelko "whole," prejudgment interest must be applied to the back pay award from the date of the Arbitrator's award.

As the appropriate rate of prejudgment interest is not addressed by any federal statute, the rate contained in the applicable state law is used. *Dushaw v. Roadway Express, Inc.*, 816 F.Supp. 1229 (N.D.Ohio 1992), reversed on other grounds, 66 F.3d 129 (6th Cir.1995). Ohio's statutory interest rate is ten per cent (10%) per annum. OHIO REV. CODE § 1343.03(A). Accordingly, prejudgment interest is awarded to Kurelko at the rate of ten per cent per annum.

## CONCLUSION

In sum, Roemer failed to timely file a motion to vacate the arbitration award and is likewise barred from arguing defenses that could have formed the basis for an action to vacate. Given the narrow standard of review of an arbitrator's decision, this Court shall not disturb the Arbitrator's award as there was sufficient evidence in the record before the arbitrator to support his decision. Furthermore, the Arbitrator's decision properly cited, relied upon, and "drew its essence" from the CBA. Therefore, as Roemer has not complied with the Arbitrator's award, prejudgment interest is awarded to Kurelko from December 5, 1997, to the date of the attached Judgment at the rate of ten per cent per annum.

Based upon the foregoing reasons, Roemer's motion (Dkt. No. 16) is **DENIED** and the Steelworkers' motion (Dkt. No. 11) is **GRANTED**.

**IT IS SO ORDERED.**

---

6. The reinstatement is with full back pay and without any loss of seniority and benefits that he would have had but for the termination.