UNITED TRANSPORTATION UNION, Plaintiff–Appellant,

v.

CUYAHOGA VALLEY RAILWAY COMPANY, Defendant–Appellee.

No. 92–3013.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1992.

Decided Nov. 10, 1992.

---

Clinton J. Miller, III, Office of General Counsel, Kevin C. Brodar (argued and briefed), United Transportation Union, Cleveland, Ohio, for plaintiff-appellant.

Ronald J. James (argued), Helen Kryshtalowych (briefed), Anne C. Morgan, Squire, Sanders & Dempsey, Mark D. Katz, LTV Steel Co., Cleveland, Ohio, for defendant-appellee.

Before: JONES and SILER, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff, United Transportation Union ("UTU"), appeals from the district court's grant of summary judgment in favor of Defendant, Cuyahoga Valley Railway Company ("Cuyahoga"), in this action under the Railway Labor Act ("RLA"). The UTU challenged a decision of a Public Law Board in district court, contending that the Board improperly refused to take jurisdiction over a dispute between the UTU and Cuyahoga. The district court held that the Public Law Board was correct in concluding that the dispute between the UTU and Cuyahoga was a "major" dispute rather than a "minor" dispute and, therefore, was not subject to the jurisdiction of the Public Law Board. For the reasons stated below, we affirm the judgment of the district court.

I

Cuyahoga's diesel shop is divided into four departments: the Car Department; the Maintenance of Equipment Department;[1] the Maintenance of Way Department; and the Clerical Department. For a number of years the employees in all four departments were represented by the United Steelworkers of America ("Steelworkers"). The relationship between the Steelworkers and Cuyahoga was governed by a collective bargaining agreement that they executed on January 1, 1984. This collective bargaining agreement permitted employees to transfer among the four diesel shop departments. This agreement also allowed employees to maintain their seniority rights in the department from which they had transferred. This allowed employees to exercise their previously-accrued seniority rights to take a job in their former department if they were laid off.[2]

In May, 1988, the National Mediation Board conducted an election in the diesel shop to determine whom the diesel shop employees wished to have as their collective bargaining representative. Each department voted separately. As a result of the election, the UTU was certified by the National Mediation Board as the exclusive bargaining agent for the employees in three of the departments. The Steelworkers continued to represent the Car Department employees. The 1984 agreement remained in effect in all four departments, although the UTU assumed the representation of the employees in the departments other than the Car Department.

In early 1989, Cuyahoga and the Steelworkers agreed to modify the collective bargaining agreement with respect to the Car Department. The effect was to eliminate the other three departments from the scope of their agreement and to modify the seniority rights of former and current Car Department employees. All former Car Department employees who had left the Car Department before February 1, 1989, for other jobs in the diesel shop had to return to their former jobs in the Car Department by March 1, 1989, or they would lose their seniority rights in the Car Department. Seven former Car Department employees, who were members of the UTU and were then employed in other departments, were notified of this change.

On February 16, 1989, the UTU filed a grievance with Cuyahoga on behalf of the seven former Car Department employees who had transferred from the Car Department and were about to lose their Car Department seniority rights. Cuyahoga denied the grievance on February 24, 1989. The UTU then appealed the matter to a conference between the Union and high

---

1. The "Maintenance of Equipment Department" is referred to in the Public Law Board's opinion as the "Diesel Shop." However, we refer to all four departments collectively as the diesel shop as do the parties and the district court.

2. Paragraph 2(b) of Article 6 of the 1984 agreement provides:

    When a reduction in forces is made, it shall be in the reverse order of seniority within the department, starting with the highest job af-

fected and with the employe on such job having the least seniority. Employes who have been promoted or transferred from one department to another may, when laid off in such department, displace any employe their junior in another department, provided they have seniority rights and qualifications for the position.

J.A. at 82.

level Cuyahoga officials pursuant to section 3 First (i) of the RLA. 45 U.S.C. § 153 First (i) (1988). Cuyahoga denied the appeal on March 27, 1989. The UTU then appealed to the Public Law Board.

The Board, after a hearing, held that this matter was not within its jurisdiction because the basis of the dispute was the failure of Cuyahoga to bargain collectively with the UTU with respect to the seniority issue. It held that a Public Law Board only has jurisdiction over matters involving contract application or interpretation, and that the matter before it did not involve issues of application or interpretation.

The UTU then filed a petition in federal district court to review and set aside the decision of the Public Law Board, and both parties moved for summary judgment. The district court granted summary judgment for Cuyahoga. The court held that this was a major dispute because it arose from modifications in the 1984 agreement by the 1989 contract between Cuyahoga and the Steelworkers rather than from interpretation of the 1984 agreement, and because the UTU was challenging the validity of the 1989 contract between Cuyahoga and the Steelworkers. Thus, the district court concluded that the dispute between the UTU and Cuyahoga was a major dispute, which was not within the jurisdiction of the Public Law Board. This timely appeal followed.

## II

This court reviews the grant of Defendant's motion for summary judgment *de novo. Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir. 1990). Since there are no factual issues in dispute, the only issue for review in this case is a matter of law. The issue of law that we must decide is whether this dispute should be characterized as a major dispute or as a minor dispute.

**3.** 45 U.S.C. § 152 Seventh (1988) provides:
No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in

## III

Minor disputes involve the interpretation or application of particular provisions of existing collective bargaining agreements. 45 U.S.C. § 153 First (i) (1988); *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). Minor disputes arise when both parties claim a right under an existing collective bargaining agreement. *Id.* The distinguishing feature of a minor dispute is that it can be "conclusively resolved by interpretation of the existing agreement" between the parties. *Consolidated Ry. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 305, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989) (*"Conrail"*).

Major disputes involve the formation of collective bargaining agreements. *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289. Major disputes arise when the parties seek to negotiate a new agreement or to make changes in an existing agreement. *Conrail,* 491 U.S. at 302, 109 S.Ct. at 2480. Major disputes also arise when there is a unilateral change in "rates of pay, rules, or working conditions." 45 U.S.C. § 152 Seventh (1988).[3] When it is unclear whether a dispute is a major dispute or a minor one, the dispute should be characterized as minor if the carrier's actions are "arguably justified by the terms of the parties' collective-bargaining agreement." *Conrail,* 491 U.S. at 307, 109 S.Ct. at 2482.

To resolve a minor dispute, the parties first resort to the grievance procedure mandated by their collective bargaining agreement. 45 U.S.C. § 153 First (i) (1988). If the grievance procedure fails to resolve the dispute, the next step is a conference between union and carrier officials. *Id.* If the conference does not settle the dispute, then it must be submitted to arbitration. 45 U.S.C. § 153 First (i), (m) (1988). Arbitration may be conducted by the National Railroad Adjustment Board, 45 U.S.C. § 153 First (i) (1988), or the parties may agree in advance to submit their

agreements except in the manner prescribed in such agreements or in section 156 of this title.

dispute to another arbitral board such as a Public Law Board. 45 U.S.C. § 153 Second (1988). Decisions of an arbitral board are binding and are subject to very limited judicial review. 45 U.S.C. § 153 First (q) (1988).

To resolve a major dispute, the parties must first negotiate over the disputed change. 45 U.S.C. § 156 (1988). If negotiation fails, the parties may then resort to mediation by the National Mediation Board. *Id.* The carrier may not make the disputed change as long as the mediation process continues. *Conrail,* 491 U.S. at 302–03, 109 S.Ct. at 2480; 45 U.S.C. § 156 (1988). If the carrier does attempt to make the change, a federal district court has the power to enjoin the carrier from making it. *Conrail,* 491 U.S. at 303, 109 S.Ct. at 2480.

## IV

In this case, the UTU argues that this dispute is a minor dispute because it can be resolved by interpreting the conflicting provisions of the Cuyahoga–Steelworkers agreements; therefore, it argues, the Public Law Board is the appropriate body to decide this dispute. Cuyahoga responds that it does not rely on the 1984 agreement to support the change in seniority rules; it contends that it had a statutory duty to bargain with the Steelworkers and that it met that duty by negotiating the 1989 agreement. Cuyahoga further argues that this is not a matter of contract interpretation at all because "there are no competing contract provisions [in the 1989 agreement] which trigger this dispute." Rather, Cuyahoga argues, the UTU is in reality challenging the validity of the 1989 Cuyahoga–Steelworkers agreement. Such a challenge, they argue, is a major dispute.

In this case, the Public Law Board was not presented with a dispute involving the interpretation of either the 1984 or the 1989 Cuyahoga–Steelworkers agreement. The meaning of the agreements was clear. Rather, the issue submitted to the Public Law Board to decide was whether Cuyahoga and the Steelworkers could legally modify the 1984 collective bargaining agreement, insofar as it dealt with the Car De-

partment, without including the UTU, by then a party to the agreement, in the negotiations. Whenever a dispute arises over the modification of an existing collective bargaining agreement, it is a major dispute. *Burley,* 325 U.S. at 723, 65 S.Ct. at 1289. Under the RLA, arbitral boards have no jurisdiction over major disputes. 45 U.S.C. § 153 First (i) (1988); 45 U.S.C. § 152 Seventh (1988). Consequently, the Public Law Board correctly decided that it did not have jurisdiction over the dispute.

As additional support for our conclusion, we point out that before the Public Law Board, the UTU actually argued that the 1989 contract between Cuyahoga and the Steelworkers was invalid because the UTU was not a party to the negotiations over the 1989 modifications of the 1984 contract. A Public Law Board, however, as stated, does not have jurisdiction over a challenge to the validity of a collective bargaining agreement. *Brotherhood of Railway Trainmen v. Howard,* 343 U.S. 768, 774, 72 S.Ct. 1022, 1025, 96 L.Ed. 1283 (1952). Instead, a challenge to the validity of a collective bargaining agreement is within the jurisdiction of the federal courts. *Brotherhood of Railroad Trainmen v. Smith,* 251 F.2d 282, 285–86 (6th Cir.), *cert. denied,* 356 U.S. 937, 78 S.Ct. 778, 2 L.Ed.2d 812 (1958). Therefore, we conclude that the Public Law Board did not have jurisdiction to decide this dispute.

## V

Because we conclude that the dispute between the UTU and Cuyahoga is a major dispute, we AFFIRM the district court's grant of summary judgment.