### The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

### BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, Defendant.

No. 3:98–CV–0887–T.

United States District Court, N.D. Texas, Dallas Division.

Feb. 17, 2000.

Jerry Dale Mason, Elizabeth Anne Schartz, Thompson & Knight, Dallas, TX, Lawrence M. Stroik, Charles W. Shewmake, Burlington Northern & Santa Fe Railway Co, Fort Worth, TX, for Burlington Northern and Santa Fe Railway Company A. Corporation, plaintiffs.

Sanford Ross Denison, Baab & Denison, Dallas, TX, Richard S. Edelman, O'Donnell Schwartz & Anderson, Washington, DC, for Brotherhood of Maintenance of Way Employes, defendants.

*ORDER GRANTING IN PART PLAIN-TIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MALONEY, District Judge.

Before the Court are cross-motions for summary judgment filed by Plaintiff The Burlington Northern and Santa Fe Railway Company (BNSF) and Defendant Brotherhood of Maintenance of Way Employes (BMWE).[1] After consideration, the Court concludes that each motion should be granted in part.

BNSF brings this action seeking declaratory and injunctive relief from BMWE, pursuant to the Railway Labor Act (RLA), Title 45 U.S.C. § 151 *et seq.*[2] BNSF is a

---

1. BMWE uses the spelling "employes" in its name. However, BNSF used the common spelling when filing this action.

2. BNSF originally sought monetary damages, but the Court dismissed this claim on October 26, 1998.

common carrier by rail, headquartered in Fort Worth, Texas. BMWE is an unincorporated association and labor organization which represents certain crafts or classes of BNSF employees. BMWE negotiates and administers collective bargaining agreements with BNSF and other rail carriers, and is a labor representative under section 2 Ninth of the RLA (Title 45 U.S.C. § 152 subd. 9). BNSF and BMWE entered into a collective bargaining agreement on September 1, 1982. That agreement contains, *inter alia*, the guidelines concerning wages, qualification, promotion and transfer, accrual of seniority, and working conditions for BNSF and its employees who are represented by BMWE. On May 12, 1998, BMWE struck over what it claimed was BNSF's unilateral change of the application of the rules of qualification, promotion, and accrual of seniority under rules 4 and 23 of the September 1982 collective bargaining agreement.

The material facts in this case are not disputed. Under the September 1982 agreement, BMWE employees obtain promotions and transfers through "bidding" for various positions which are "bulletined" by BNSF. Rule 4 of the September 1982 agreement, entitled "Promotion and Seniority of Promoted Employes," provides at part B, that promotions and transfers "shall be based on ability and seniority; ability being sufficient, seniority shall prevail, the Company to be the judge, subject to appeal." Rule 4, part C, further provides that once an employee is promoted or transferred to a new position, his seniority in the new position "will date from their assignment to a regular bulletined position, either temporary or permanent, provided they are not returned to their former positions within the first thirty (30) calendar days on account of lack of ability to perform the work of the position." Rule 23, entitled "Failure to Qualify," provides at part A: "Employes awarded bulletined positions, or employes securing positions through exercise of seniority, in a class in which not yet qualified, will not be disqualified for lack of

ability to do such work after a period of thirty (30) calendar days thereon." Rule 23 further states at part D: "An employe awarded a bulletined position or securing a position through exercise of seniority to a position for which not yet qualified shall if disqualified return to his former position." In 1996, the parties agreed to eliminate a requirement that a BMWE members "protect" his seniority by working in the highest ranking position he could obtain. Under the former scheme, if the employee did not work in the highest ranking position he could obtain, his seniority would be forfeited. After this requirement was eliminated, it became possible, and to some extent common, for BMWE members to bid for and be awarded positions, and consequently to acquire seniority—which began to accrue as of the date the new position was awarded—without completing thirty days in the new position, or in some cases, not reporting to the new position at all.

On March 1, 1998, BNSF issued Bulletin No. AL–05 which announced positions available for bids from BMWE members, including a foreman position in Mullen, Nebraska. Jodi Thompson, a sectionman and a BMWE member, bid for and was awarded the Mullen, Nebraska, foreman position on March 15, 1998. The foreman position is a higher rank than sectionman, as such, when Ms. Thompson bid for the foreman position, she did not have any foreman rank seniority. The reporting date for the foreman position in Nebraska was March 23, 1998. On March 19, 1998, BNSF sent a letter to Ms. Thompson, which states in relevant part:

> Recently, you were awarded Position # 59101P, Job # 22, Foreman, District # 10 at Mullen, Nebraska, with a reporting date of March 23, 1998. Unfortunately, you were bumped on March 19, 1998, prior to your reporting date by Mr. W.R. Taylor. Since you did not perform service as a Foreman at Mullen, Nebraska as the result of your displacement, you did not qualify and will not be

given a Foreman's [seniority] date at this time.

After her displacement from the Nebraska foreman position, Ms. Thompson attempted to displace a more junior employee in another foreman position, but her request was denied by BNSF because it claimed she had no foreman seniority.

BMWE claims that when BNSF disqualified Ms. Thompson from the Nebraska foreman position prior to her reporting to that position, and did not recognize her foreman seniority, it violated rule 4 of the September 1982 agreement. Specifically, BMWE claims that rule 4 provides that an employee's seniority in a new position is acquired on the date the position is awarded, and that an employee may not be disqualified unless he shows actual inability to perform within the first thirty days on the job. BMWE further claims that rule 23 does not allow BNSF to disqualify an employee after a position is awarded but before the employee begins work, or to deny that an employee's seniority rights begin to accrue on the date the position is awarded.

Both parties acknowledge that in the past, hundreds of employees have accrued seniority in positions to which they have been promoted, beginning on the date that they were awarded such positions, regardless of whether they actually reported to or remained at the new position. However, BNSF contends that only recently has it recognized the need to exercise its rights under rule 23 to disqualify employees who have been assigned to higher ranking positions before the employee reports to the position, because of safety concerns related to employees being awarded positions which they lack the ability to perform. BNSF further maintains that if it disqualifies an employee, either before or within 30 days after the employee reports to his new position, he is returned to his former position, and will not obtain any seniority rights in the new job. BNSF points out that it has disqualified employees in the past after a new position was awarded but before the employee reported to his new positions for such reasons as lack of a commercial drivers' license or basic mechanics' skills, which were prerequisites to performance of the new position. BNSF contends that it would be irrational and unsafe to require that an employee report to a job and begin performance of a task he is not qualified to perform, before BNSF has the right to remove him.

BMWE officers met with BNSF officials to discuss the dispute over Ms. Thompson's disqualification in March 1998. BMWE contended that BNSF's disqualification of Ms. Thompson and failure to recognize her foreman seniority constituted a unilateral change of the September 1982 agreement in violation of the RLA. BNSF contended that the dispute should be classified as a minor dispute under the RLA, and offered to submit it to arbitration. BMWE refused to arbitrate the dispute, claiming that it was a major dispute under the RLA, and demanded that BNSF rescind its actions with respect to Ms. Thompson and restore what it claimed was the status quo—not disqualifying employees from new positions until after they had reported, and recognition of seniority rights from the date positions were awarded. On March 30, 1998, BMWE wrote to BNSF, confirming their position that BNSF was "attempt[ing] to unilaterally change the application of Rules 4C and 23 of our September 1, 1982 Agreement." The letter also informed BNSF that "if you fail to return to the application of the September 1, 1982 Agreement as outlined above and to the manner it has been applied for these many years, the BMWE would do whatever we deem necessary to protect the integrity of our Agreement." BNSF responded on April 8, 1998, maintaining that the dispute was minor under the RLA, and proposing an agreement to establish an arbitration board. On May 12, 1998, BMWE struck over this dispute.

The Court entered a temporary restraining order against the strike on May 12, 1998. Despite the fact that BNSF was

able to obtain an order restraining the strike on the same day that it commenced, the summary judgment evidence shows that BNSF endured considerable disruption and sustained substantial economic losses as a result of the strike. On June 2, 1998, the Court entered a preliminary injunction against the strike. After the injunction was entered, the parties agreed to arbitrate the dispute with respect to Ms. Thompson. The arbitrator's award, entered on January 30, 1999, found in favor of BMWE. The arbitrator found that, subject to limited exceptions, such as clerical error and lack of a particular certificate or license, once an employee has been awarded a new position, he may not be disqualified until he has actually reported to that position. Specifically, the arbitrator found that:

> Burlington Northern Santa Fe Railway violated Rule 4C of the 1982 Burlington Northern–BMWE agreement when it refused to recognize the foreman seniority obtained by Jodi L. Thompson when she was promoted by BNSF under Rule 4B of the agreement to a foreman position after she was displaced from the foreman position by a more senior employee before she reported to the new position; and that Ms. Thompson, who was promoted to the foreman rank at the same time as a less senior sectionman was promoted to the foreman rank, should have been provided with the right to displace the promoted foreman who was junior to her.

As a remedy, the arbitrator directed BNSF to retroactively reinstate Ms. Thompson's foreman seniority as of the date she was awarded the Nebraska foreman position, and to allow her to obtain a new foreman position through the exercise of that seniority. The arbitrator noted that nothing in its award precluded BNSF from determining that Ms. Thompson was disqualified within thirty days after she reported to a foreman position.

On March 1, 1999, BNSF filed its motion for summary judgment. BNSF seeks (1) a permanent injunction against a continuation of the May 12, 1998, strike and any future strike over the issue that precipitated the May 12, 1998, strike; (2) a permanent injunction against any strike over any dispute that might arise from the interpretation or application of rules 4 and 23 of the parties' September 1982 agreement; and (3) a permanent injunction requiring BMWE to give BNSF and the Court three days advance notice before commencing any strike, job action, or concerted activity. On April 8, 1999, BMWE moved for summary judgment. BMWE seeks summary judgment on the grounds that: (1) the May 12, 1998, was a major dispute under the RLA, and therefore BNSF is not entitled to a permanent injunction against a strike over that dispute; (2) BNSF is not entitled to a permanent injunction against any future strikes over the issue that prompted the May 12, 1998, strike as a matter of law; (3) BNSF is not entitled to a permanent injunction against any future strikes over any disputes related to the interpretation or application of rules 4 and 23 of the September 1982 agreement as a matter of law; and (4) the Court is without authority to enter a permanent injunction requiring BMWE to give advance notice of its intent to strike, or in the alternative, under the facts alleged, BNSF is not entitled to a permanent injunction requiring BMWE to give at least three days advance notice of its intent to strike.

Summary judgment should be entered only when the record establishes that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment, and all pleadings and evidence are viewed in the light most favorable to the nonmovant. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 559 (5th Cir.1997).

Once a properly supported motion for summary judgment has been made, the

adverse party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will determine what facts are material. *Id.* A dispute as to a material fact is "genuine" under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to preclude a grant of summary judgment. *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir.1999).

The above recitation is the typical standard for summary judgment when the movant claims there is no evidence on a particular issue on which the nonmovant bears the burden. However, in this case, neither party presents a no-evidence point which would allow it to prevail on summary judgment. Rather, the parties assert that all the evidence necessary to decide this case is in the record, and each party asserts that it is entitled to judgment because all that remains for determination are questions of law.

Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record. *See Trevino v. Yamaha Motor Corp.,* 882 F.2d 182, 184 (5th Cir.1989). Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a nonmovant merely debates the consequences flowing from admitted facts, summary judgment is proper. *See Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 998 (5th Cir.1989). It is also clear that "[w]hen everything that can be adduced at trial is before the judge ... and the parties, while urging conflicting ultimate facts or conclusions, have no evidentiary disputes, a trial serves no useful purpose." *Brown v. United States,* 890 F.2d 1329, 1334 (5th Cir.1989). Summary judgment is always appropriate when there is no

need to put the parties or the Court to the time and expense of a trial.

Of course, simply because both sides suggest that there are no material facts in dispute does not make it so. *See Society of Financial Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc.,* 41 F.3d 223, 225 (5th Cir.1995). However, in this case, the Court concludes that there are no material factual issues still genuinely in dispute; the Court sees only differences of opinion over the legal consequences of the evidence. Therefore, the Court can decide the legal issues on the record as it currently stands.

The first issue the Court must decide is whether the dispute underlying the May 12, 1998, strike was a minor or major dispute under the RLA. The purpose of the RLA is to promote stability in labor-management relations and to provide a comprehensive framework for dispute resolution that obviates the necessity to resort to self-help and intervention by the courts. *See Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). The RLA and the caselaw interpreting it have established two classes of disputes, minor and major. Generally speaking, "major disputes seek to create contractual rights, minor disputes to enforce them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (hereinafter, *Conrail*).

Minor disputes involve the interpretation or application of particular provisions of existing collective bargaining agreements covering rates of pay, rules, or working conditions. *See Hawaiian Airlines, Inc.,* 512 U.S. at 253, 114 S.Ct. 2239; *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). A distinguishing feature of a minor dispute is that it can be "conclusively resolved by interpretation of the existing agreement" between labor and management. *Conrail,* 491 U.S. at 305, 109 S.Ct. 2477.

Major disputes relate to the formation of collective bargaining agreements or efforts to secure their formation. *Burley,* 325 U.S. at 723, 65 S.Ct. 1282; *Conrail,* 491 U.S. at 302, 109 S.Ct. 2477 (citing *Burley* ). Major disputes concern rates of pay, rules, and working conditions. A major dispute also arises when the carrier makes a unilateral change in rates of pay, rules, or working conditions of its employees as provided for in the collective bargaining agreement, except in the manner provided for in the agreement. *Conrail,* 491 U.S. 299, 302–303, 109 S.Ct. 2477 (citing RLA section 2 Seventh, 45 U.S.C. § 152 subd. 7); *United Transp. Union v. Cuyahoga Valley Ry. Co.,* 979 F.2d 431, 434 (6th Cir.1992).

The RLA requires the parties to a minor dispute to first resort to the grievance procedure in their collective bargaining agreement. *Id.* If this fails to resolve the dispute, a conference between union and rail carrier officials must be held. *Id.* If this fails, the dispute "is subject to compulsory and binding arbitration before the National Railroad Adjustment Board," or before an adjustment board agreed to by the union and the rail carrier. *Conrail,* 491 U.S. at 303, 109 S.Ct. 2477. Federal courts may enjoin strikes arising out of minor disputes. *Id.; See also Burlington Northern R.R. v. BMWE,* 961 F.2d 86, 87 n. 3 (5th Cir.1992).

To resolve a major dispute, the parties must engage in a "lengthy process of bargaining and mediation." *Conrail,* 491 U.S. at 302, 109 S.Ct. 2477. During the pendency of the negotiation and mediation process, "the parties are obligated to maintain the status quo." *Id.* If, for example, the carrier implements major changes before the completion of the major dispute resolution process, a court may enjoin the carrier from taking such action. *See, e.g., id.* If this process concludes and no

agreement has been reached, the parties may resort to self-help. *Id.*

When, as in this case, the parties do not agree on whether the dispute is properly classified as minor or major, the Court must substitute its own characterization of the dispute for that of the parties. *See Conrail,* 491 U.S. at 306, 109 S.Ct. 2477. The Court must determine "whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action." *Id.* at 305, 109 S.Ct. 2477. The "distinguishing feature" that differentiates a minor dispute from a major dispute is "that the dispute may be conclusively resolved by interpreting the existing agreement," although the parties' custom and practice may also be considered. *Id.* at 305 & 311, 109 S.Ct. 2477. A dispute should be classified as minor if the rail carrier's actions are "arguably justified by the terms of the parties' collective bargaining agreement." *Id.* at 307, 109 S.Ct. 2477.[3] The rail carrier bears only a light burden in establishing that a dispute is minor, and therefore subject to the exclusive jurisdiction of the arbitration board provided for under the RLA. *Id.* (citing *BMWE, Lodge 16 v. Burlington Northern R.R. Co.,* 802 F.2d 1016, 1022 (8th Cir. 1986)); *see also Ruby v. TACA Int'l Airlines, S.A.,* 439 F.2d 1359, 1363 n. 5 (5th Cir.1971) (holding that carrier's interpretation must be wholly spurious).

■ The Court concludes that the dispute that culminated in BMWE's May 12, 1998, strike is a minor dispute under the RLA. BNSF's interpretation of its contractual rights under the language of rules 4 and 23 of the September 1982 agreement was arguably justified, and certainly was not wholly spurious. While in the past, BNSF may have allowed many BMWE members to obtain seniority upon assignment to new positions without actually re-

---

**3.** BNSF's representation to the Court that a dispute over the interpretation of a collective bargaining agreement is a minor dispute under the RLA "so long as the dispute does not involve an actual change of the agreement's written words." is a direct misstatement of the law.

porting to those positions, this fact alone does not make BNSF's interpretation of its rights and assertion thereof frivolous. BNSF also presented evidence of its past practice of disqualifying BMWE members before they reported to their new positions and of not recognizing their accrual of seniority in the awarded position. BNSF further presented evidence that it only sought to exercise its contractual rights— accordingly to its interpretation of what they were—when faced with what it viewed as the unanticipated problem of employees accruing seniority at ranks for which they were not qualified.

■ Furthermore, the fact that the dispute was eventually resolved in large part in BMWE's favor at arbitration has no effect on the determination that the dispute is minor. The merits of a dispute is an entirely different inquiry than the classification of the dispute as minor or major under the RLA. *See, e.g., Conrail,* 491 U.S. at 317, 109 S.Ct. 2477 ("In the end, the Union's arguments ... conceivably could carry the day in arbitration. But they do not convince us that [the rail carrier's] contractual arguments are frivolous or insubstantial."); *see also CSX Transp., Inc. v. United Transp. Union,* 879 F.2d 990, 1004 (2d Cir.1989). After initially conferring with BMWE officials, BNSF properly offered to arbitrate this dispute. However, BMWE refused to submit the dispute to arbitration, in violation of the established dispute resolution procedure for minor disputes under the RLA. The summary judgment evidence presented by BNSF, particularly BMWE's July 14, 1995, non-expiring strike authorization vote, convinces the Court that there is a sufficient continuing strike threat to support an injunction. Accordingly, the May 12, 1998, strike was illegal under section 3 First of the RLA, (Title 45 U.S.C. §§ 152

subd. 6, & 153 subds. 1, 2) and any continuation of that strike or any future strike over the same issue as it relates to an employee other than Ms. Thompson will be permanently enjoined.[4]

BNSF also requests that the Court enter an injunction barring any future strikes over any dispute BMWE may have with BNSF with respect to rules 4 and 23 of the September 1982 agreement. The injunction that BNSF requests implicates both the Norris–LaGuardia Act (NLGA), Title 29 U.S.C. § 101 *et seq.,* and the RLA. The NLGA expresses a basic policy against enjoining the activities of labor unions. *See, e.g., Burlington Northern R.R. v. BMWE,* 481 U.S. 429, 437, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987). However, the NLGA's general prohibition against injunctions must give way when it is necessary to enforce compliance with specific provisions of the RLA. *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 513–514, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989); *see id* at 445, 107 S.Ct. 1841. However, the exception to the NLGA is only applicable to enforce a *specific* mandate of the RLA. *Burlington Northern R.R. v. BMWE,* 481 U.S. at 447, 107 S.Ct. 1841 ("Faced with a choice between the ambiguity of the RLA and the unambiguous mandate of the Norris–LaGuardia Act, we choose the latter."). Furthermore, even if an exception to the NLGA to enforce the RLA is necessary, a court should hesitate to invoke the sweeping remedy of an injunction, unless that is the only effective solution. *Id.* at 446, 107 S.Ct. 1841.

■ The Court concludes that an injunction barring BMWE from striking over any future dispute with BNSF regarding the application of rules 4 and 23 would violate the NLGA and undermine

---

4. BNSF also claims that BMWE violated the duty of good faith bargaining imposed by section 2 First of the RLA (Title 45 U.S.C. § 152 subd. 1), by intentionally striking over what it knew to be a minor dispute. However, since the Court has already granted a permanent

injunction with respect to the May 12, 1998, strike, and the Court is unaware of any additional remedy that could be afforded to BNSF if the Court found that BMWE violated section 2 First, the Court does not believe it is necessary to reach this issue.

the RLA. In order to comply with the NLGA, a labor injunction must be limited to "only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court .…" 29 U.S.C. § 109; *United States Steel Corp. v. United Mine Workers of America,* 519 F.2d 1236, 1245–46 (5th Cir.1975) (citing and quoting the NLGA). Rules 4 and 23 of the parties' September 1982 agreement are fairly complex, multi-part sections. Without knowing the specific act that is the subject matter of a potential dispute over the interpretation and application of rules 4 and 23, the Court does not believe it could craft an injunction that would comply with the specificity requirements of the NLGA. Furthermore, while it is possible that future disputes between BMWE and BNSF over rules 4 and 23 will be, like the one before the Court, minor disputes under the RLA over which a strike is illegal, it is equally possible that a future dispute will be precipitated by an interpretation of these rules by BNSF that is without arguable basis in fact and wholly spurious, in which case the dispute would be major, *see, e.g., Conrail* 491 U.S. at 307, 109 S.Ct. 2477, and a strike permissible. Therefore, such an injunction would also be at odds with the RLA. Accordingly, BNSF's request for an injunction prohibiting BMWE from striking over any future disputes that may arise from the interpretation and application of rules 4 and 23 of the parties' September 1982 agreement is denied, and summary judgment is granted to BMWE on this claim.

Finally, BNSF requests an injunction requiring BMWE to give BNSF and the Court at least 72 hours notice before commencing any strike or concerted job action against BNSF. In its briefs supporting its motion for summary judgment and opposing BNSF's motion for summary judgment, BMWE attempts to argue that the Court is prohibited from issuing such an injunction under the NLGA and the RLA.

This is an attempt to reargue issues that were previously decided by the Court on BMWE's motion to dismiss. On October 26, 1998, the Court held that BNSF "has stated a valid claim for a prospective injunction. [BNSF] may be able to produce facts justifying the requested injunctive relief." *BNSF v. BMWE,* No. 3:98–CV–0087–T, slip op. at 8 (N.D.Tex. Oct. 26, 1998) (citation omitted). Therefore the only issue before the Court now is whether BNSF has produced facts sufficient to justify the notice injunction it requests. The Court finds that it has not.

■ The summary judgment evidence shows that BMWE has struck three times in the last eight years against BNSF, including the strike which is the subject matter of this case. All of these strikes have been held to involve minor disputes. BNSF also has presented evidence of BMWE striking three other times in the last eight years against other rail carriers. At least one of those strikes was determined to have been over a minor dispute. While disturbing, the Court does not believe that this evidence is sufficient to support the injunction that BNSF requests. *See Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695, 705–708 (6th Cir.1977); *United States Steel Corp. v. United Mine Workers of America,* 534 F.2d 1063, 1075–1078 (3d Cir.1976). However, the Court recognizes and is not unsympathetic to the fact that BNSF has sustained substantial losses from BMWE's strikes over minor disputes, even when, as here, the strike was promptly enjoined. The Court further recognizes that under binding Fifth Circuit precedent which prohibits monetary damages for violation of the RLA, *Burlington Northern R.R. Co. v. BMWE,* 961 F.2d 86, 88–89 (5th Cir.1992), a rail carrier is without a remedy for the damage it sustains when a union deliberately strikes over a minor dispute and takes steps to keep the strike secret so that the carrier cannot obtain a temporary restraining order until the damage has been done. The summary judg-

ment evidence shows that BMWE is at least aware of this "loophole" in the law, and its potential for exploitation to BMWE's advantage. The Court's holding that BNSF is not entitled to an advance notice injunction against BMWE on the record before the Court in no way precludes BNSF from obtaining such an injunction against BMWE in the future, if BNSF can make the requisite factual showing at that time. *Cf. Old Ben Coal Corp. v. Local Union No. 1487 of United Mine Workers of America*, 457 F.2d 162 (7th Cir.1972) & *Old Ben Coal Corp. v. Local Union No. 1487 of United Mine Workers of America*, 500 F.2d 950 (7th Cir.1974). Accordingly, BNSF's request for an advance notice injunction is denied, and summary judgment is granted to BMWE on this claim.

It is therefore ORDERED that Plaintiff The Burlington Northern and Santa Fe Railway Company's motion for summary judgment, filed on March 1, 1999, is granted in part as provided above.

It is FURTHER ORDERED that Defendant Brotherhood of Maintenance of Way Employes' motion for summary judgment, filed on April 8, 1999, is granted in part as provided above.

### ORDER GRANTING FINAL IN-JUNCTIVE RELIEF AND FINAL JUDGMENT

On June 2, 1998, after a hearing and consideration of the parties' briefs, the Court entered a preliminary injunction on the application of Plaintiff The Burlington Northern and Santa Fe Railway Company against Defendant Brotherhood of Maintenance of Way Employes. After ruling on the parties' cross motions for summary judgment, the Court makes the following findings in accordance with Federal Rule of Civil Procedure 65:

1. This action concerns a dispute governed by the Railway Labor Act, Title 45 U.S.C. § 151 *et seq.*, the Norris–LaGuardia Act, Title 29 U.S.C. § 101 *et seq.*, and the Interstate Commerce Act, Title 49 U.S.C. § 10101 *et seq.*, and this Court has jurisdiction over the parties and the subject matter involved.

2. On May 12, 1998, the Brotherhood of Maintenance of Way Employes struck The Burlington Northern and Santa Fe Railway Company over a dispute concerning the application and interpretation of rules 4 and 23 of the parties collective bargaining agreement of September 1, 1982. These rules govern qualification, promotion, and accrual of seniority for Brotherhood of Maintenance of Way Employes members who are employees of The Burlington Northern and Santa Fe Railway Company. The particular employee who was the focal point of this job action was Ms. Jodi Thompson, a Brotherhood of Maintenance of Way Employes member and employee of The Burlington Northern and Santa Fe Railway Company.

3. Despite the fact that the May 12, 1998 strike was restrained by the Court on the same day it was commenced, The Burlington Northern and Santa Fe Railway Company suffered substantial economic damage as a result of the strike.

4. The May 12, 1998, strike was over a "minor dispute" under the Railway Labor Act, and as such, was illegal.

5. Any strike over the same dispute that precipitated the May 12, 1998, strike, either with respect to Ms. Thompson, or over a dispute involving the same subject matter with respect to any other Brotherhood of Maintenance of Way Employes member, would be an illegal strike over a minor dispute.

6. The Court finds that The Burlington Northern and Santa Fe Railway Company has shown that it will suffer irreparable injury harm unless the Brotherhood of Maintenance of Way Employes is enjoined from striking over the dispute that precipitated the May 12, 1998, strike, with respect to Ms. Thompson, or over a dispute involving the same subject matter with respect to any other Brotherhood of Maintenance of Way Employes member.

7. The Court finds that the public interest is served by the granting of this injunction.

It is therefore ORDERED and ADJUDGED that Defendant Brotherhood of Maintenance of Way Employes, and all persons, agents, representatives, organizations, and members acting directly or indirectly on its behalf are, in connection with the dispute that precipitated the May 12, 1998, strike, with respect to Ms. Thompson, or over a dispute involving the same subject matter with respect to any other Brotherhood of Maintenance of Way Employes member, enjoined from:

(a) encouraging, inducing, approving, continuing, starting, or carrying out any picketing on The Burlington Northern and Santa Fe Railway Company's railroad facilities;

(b) picketing any of the premises on which The Burlington Northern and Santa Fe Railway Company conducts its railroad operations, including the entrance thereto, and all other places where any of The Burlington Northern and Santa Fe Railway Company's railroad business and operations are carried on;

(c) interfering with ingress or egress from said premises;

(d) interfering in any manner by violence or sabotage with the delivery, loading, unloading, dispatch, or movement of The Burlington Northern and Santa Fe Railway Company's equipment or any of the contents thereof; and from loitering or congregating on The Burlington Northern and Santa Fe Railway Company's premises on, at, or near any approaches to said premises, or upon any public street or highway leading to or from any places where The Burlington Northern and Santa Fe Railway Company's employees or those having business with The Burlington Northern and Santa Fe Railway Company desire to enter or leave en route to or from said premises;

(e) in any manner interfering with the work of any employee of The Burlington Northern and Santa Fe Railway Company, or inducing or attempting to induce, any person employed by The Burlington Northern and Santa Fe Railway Company from performing his work and duties and from in any manner attempting to induce any such employee to desist therefrom; and

(f) engaging in any concerted work stoppage, slowdown, or other job action which has the effect of negatively impacting The Burlington Northern and Santa Fe Railway Company's operation of its rail transportation system.

It is **FURTHER ORDERED and ADJUDGED** that this injunction shall be immediately effective and shall continue and be in effect until otherwise changed or dissolved by the Court.

It is **FURTHER ORDERED and ADJUDGED** that Plaintiff The Burlington Northern and Santa Fe Railway Company's application for an injunction barring Defendant Brotherhood of Maintenance of Way Employes from striking over any future dispute which may arise with respect to rules 4 and 23 of the parties' September 1, 1982, collective bargaining agreement, is denied with prejudice.

It is **FURTHER ORDERED and ADJUDGED** that Plaintiff The Burlington Northern and Santa Fe Railway Company's application for an injunction requiring Defendant Brotherhood of Maintenance of Way Employes to give 72 hours advance notice to The Burlington Northern and Santa Fe Railway Company before striking over any dispute which may arise over the interpretation or application of the parties' September 1, 1982, collective bargaining agreement, is denied without prejudice.

It is **FURTHER ORDERED and ADJUDGED** that all relief not specifically granted herein is denied.