DUPLANTIER, District Judge,
dissenting:
The Railway Labor Act, 45 U.S.C. § 151, et seq., (RLA) regulates in great detail the relationship between railroads and the unions which represent railway employees. Section 152 First of the RLA provides that carriers and their employees have a duty “to exert every reasonable effort ... to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.” Because I conclude that a court has no authority to add to that duty a requirement that a railway union provide advance notice before engaging in a strike, work stoppage, or other job action against a carrier, I respectfully dissent.
Appellant Brotherhood of Maintenance of Way Employees (BMWE) is a labor union which represents those employees of numerous railroads who are responsible for maintaining, repairing and rehabilitating railroad tracks throughout the United States. Since 1993 BMWE has engaged in twelve strikes or planned strikes, each one against at least one of the six railroads who are plaintiffs in this suit. In each instance, the union gave no advance notice to the railroad of its intent to commence a strike. The railroad in question ultimately obtained injunctive relief against each of the strikes, on the ground that the dispute which gave rise to the strike was a “minor dispute,” as to which a strike is unlawful. See Consolidated Rail Corp. v. Railway Labor Executives’ Ass’n, 491 U.S. 299, 304, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). In each injunction suit brought by the railroad, the union contended that the strike or planned strike was lawful, primarily *810 because the disagreement between the parties involved a major dispute. Where a major dispute is involved, a party may resort to a strike after exhausting the bargaining and mediation process mandated by §§ 5 and 6 of the RLA. Id. at 303, 109 S.Ct. 2477.
None of the statutes regulating the relationship between railroads and the unions representing railroad employees requires advance notice of a union’s intention to strike, and during the many years since the enactment of those statutes, no railroad has sought a statutory amendment to require such notice.[1]
This suit, which was not filed in response to a strike or in anticipation of a threatened strike, represents in effect an attempt by the railroads to amend the RLA through judicial interpretation rather than legislative amendment, a tactic one carrier has previously tried unsuccessfully.[2]
The six railroad appellees initiated this suit, seeking a declaratory judgment to the effect that BMWE has violated § 152 First, by authorizing, encouraging, permitting, calling, or engaging in self-help, including strikes, without notice, over disputes involving what BMWE characterizes as unilateral changes in agreements, and by engaging in such conduct as a pattern, practice, or policy. The railroads also sought an injunction requiring BMWE in the future to give ten days advance notice of its intent to commence any job action against any of the plaintiff railroads, thereby giving the railroad the opportunity to obtain a restraining order in advance of the threatened union action. The railroads urged that the advance notice requirement was warranted to prevent significant economic losses resulting from an illegal strike, losses for which the railroads cannot recover damages from the unions. See Louisville & Nashville Railroad Company v. Brown, 252 F.2d 149, 155 (5th Cir.1958).
The district court granted the railroads’ motion for summary judgment, based in large part upon the decisions in eighteen prior suits[3] between the railroads and BMWE over an eight year period in nine different federal district courts. Each of these suits resulted ultimately in a grant of a railroad’s petition for an injunction halting an ongoing strike or prohibiting what was perceived as a threatened strike. In granting the injunction on appeal before us, the district court also relied upon statements made by union executives in depositions and press releases. Upon this summary judgment record the railroads convinced the district court that BMWE *811 had demonstrated a pattern, practice, and policy of engaging in illegal self-help activities. Based upon that finding, the district judge in effect amended the RLA (as applicable to parties to this litigation), to add a requirement that the union must give the railroad ten days advance notice before initiating any job action, including a strike. The injunction contained no temporal or geographic limitation, nor was it restricted only to union actions taken in response to specific circumstances.
While advance notice of a union’s intent to strike or to utilize any self-help action may be a laudable objective in any comprehensive statute regulating the relationship between railway unions and railroad carriers, such as the RLA, the statute cannot be construed to impose such an obligation upon a union.
I agree with the majority that the district court’s opinion provides “a persuasive explanation of its reasons for entering the injunction,” but I disagree that it supports the judgment granting the injunction. A requirement of advance notice of intent to strike may well be sound public policy; however, the imposition of such a requirement is for Congress, not the court.
The procedural history of the RLA is significant and somewhat unusual. After extensive negotiations, the railway unions and the railroads presented a proposed statute to Congress, which enacted into law the precise agreement submitted by the unions and the carriers. Thus the RLA strikes a delicate balance between the competing interests of the unions and the carriers. The advance notice requirement imposed by the district court forever shifts the balance embodied in the RLA, as between the plaintiff railroads and the BMWE.
The importance of maintaining the delicate balance embodied in the RLA has been consistently recognized. In both Norfolk Southern Ry. Co. v. Brotherhood of Locomotive Engineers, 217 F.3d 181, 190 (4th Cir.2000) and CSX Transportation, Inc. v. Marquar, 980 F.2d 359, 380 (6th Cir.1992), the court relied upon the desirability of maintaining this delicate balance between the railroads and the railway unions as the rationale for denying railroads the right to recover damages from unions which had breached their duty to arbitrate a minor dispute by engaging in an illegal strike. As noted above, the railroads contend they should be granted an injunction because they cannot recover damages for an unlawful strike. The very reason for denial of damages applies equally to an injunction: “[djamages awards between railroads and unions ... threaten the delicate balance intended by the RLA.” Id. So too would the court-created advance notice requirement at issue here.
Had Congress wanted to impose a duty of advance notice on unions, it certainly knew how to do so. In my view, the district court usurped the legislative function of Congress by imposing a duty that may well be beneficial for the common good, but is not authorized by § 152 First or any other statute.
In affirming the district court, the majority relies in part upon the desire to avoid a split between the circuits. I submit that denial of the injunction sought by the railroads would not create a circuit split. Neither case cited by the majority involved the situation presented here: an injunction for an unlimited period of time, involving future activity under unspecified circumstances, in a suit filed at a time when no adverse activity by the union is pending or then threatened. In Delta Air Lines, Inc. v. Air Line Pilots Ass’n. Int’l, 238 F.3d 1300, 1311 (11th Cir.2001), the court limited the injunctive relief to directing the union “to take further steps to end the pilots’ no-overtime campaign” then pending. In Del. & Hudson Ry. Co. v. *812 United Transp. Union, 450 F.2d 603 (D.C.Cir.1971), the court of appeals reversed the district court’s order enjoining the union then involved in a wage and rule dispute with various railroads from conducting a selective strike against fewer than all of the plaintiff railroads. The court concluded that the district judge granted the injunction based upon an erroneous legal premise. The court of appeals remanded the case, subject to the continuing jurisdiction of the court of appeals, noting that the obligation of a carrier and a union “to treat with each other through responsible conduct of the process of collective bargaining ... is not consistent with such actions as a deliberate timing of a strike without prior warning, with the purpose of enhancing plant damage, or some other garrotte of jungle warfare.” Id. at 622 (internal quotation and citation omitted,). I respectfully disagree with the majority’s conclusion that the quoted statement is not dicta. Needless to say, the denial of an injunction in the instant case could not cause a split with another circuit which also denied an injunction. Moreover, Del. & Hudson Ry. v. United Transp. Union did not involve a request for an injunction such as the one at issue in this case. There, unlike here, there was a specific disagreement and a specific threatened act triggering a request for specific injunctive relief.
Moreover, assuming arguendo that § 152 First authorizes a court to impose a duty of advance notice upon a union which has demonstrated in the past a pattern, practice or policy of illegally engaging in self-help, the summary judgment evidence before the district court does not support its conclusion that appellant has engaged in such illegal activities.
Summary judgment is proper only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R. Civ.Pro. 56(c). A genuine issue of fact exists where the evidence is such that a reasonable party could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must “demonstrate the absence of a genuine issue of material fact.” Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies that burden, then the non-movant must go beyond the pleadings and identify specific facts demonstrating that there is a genuine issue of material fact for trial. Id. at 324, 106 S.Ct. 2548. Factual controversies are resolved in favor of the non-moving party. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).
The majority declines to consider whether it was error for the district court to make “factual findings without an evi-dentiary hearing ... because BMWE does not raise the issue as a ground for reversal.” What the union clearly does raise on appeal is that the summary judgment record does not support the district court’s characterization of the union’s pri- or activities as an unlawful “pattern, practice, and policy of authorizing, encouraging, permitting, calling, or engaging in strikes, work stoppages, picketing, or other self-help” against the railroads. BMWE’s briefs clearly challenge the district court’s findings of undisputed facts to support summary judgment. Indeed, the record excerpts submitted on appeal by BMWE include the affidavits of Steven V. Powers, the assistant to the president of the BMWE, in which he sets forth specific facts disputing various “undisputed material facts” relied upon by appellees in moving for summary judgment.
*813 To conclude that BMWE’s pattern of behavior warrants imposing a requirement that it provide advance notice of its intent to utilize self-help, it is not enough simply to look at the union’s “won-loss” record in previous litigation. To reach such a conclusion it would be necessary to examine the background of each suit to determine whether the union undertook the challenged activity with a reasonable belief that the dispute giving rise to the challenged or threatened activity constituted a major dispute between the parties, which would have justified the strike which was the subject of the suit. That inquiry is essential because, as the Supreme Court has recognized, “distinguishing between major disputes and minor disputes” can be a “difficult task.” Consolidated Rail Corp. v. Railway Labor Executives’ Ass’n, 491 U.S. at 310, 109 S.Ct. 2477. The validity of that observation is borne out by the following analysis of the prior suits between appellant and appellees.
In two of the nine suits involving actual strikes, the union prevailed at the district court level, only to lose on appeal.[4] Additionally, in Atchison, Topeka & Santa Re Ry. Co, v. Brotherhood of Maintenance of Way Employees, No. 94C2765 (N.D.Ill. May 4, 1994), in granting the railroad a temporary restraining order after concluding that a minor dispute was involved, the district court acknowledged that “BMWE raise[d] a substantial argument” that the dispute at issue was properly characterized as a major dispute. The railroads do not challenge the union’s contention that in three additional situations the railroads voluntarily ceased the action giving rise to the strike.[5]
The district court also relied in part upon the union’s stated policy that it “will do what it has to do” to protect its members. That policy is simply a statement that the union will do its duty toward its members; it does not support a conclusion that the union planned to engage in unlawful activity in the future.
The district court developed an insufficient record concerning whether the union acted in good faith in undertaking the job actions in the prior suits between the union and a carrier. The summary judgment record developed before the district court does not support its conclusion that the union has demonstrated a pattern, practice, and policy of illegally engaging in self-help activities.
The foregoing analysis of the district court’s decision to issue an injunction on summary judgment is not intended to weaken the conclusion that the injunction sought by appellees should not issue in any event.
I would reverse the summary judgment entered by the district court and remand to the district court for further proceedings not inconsistent herewith.

. At oral argument, counsel for the railroads advised that in the 76 years since the RLA's enactment no railroad had ever sought such an amendment from Congress.

. In 1998, Burlington Northern and Santa Fe Railway Company, an appellee herein, filed suit in the Northern District of Texas seeking, among other things, a mandatory injunction requiring the union to give 3 days advance notice of future strikes. Burlington N. & Santa Fe Ry. Co. v. Brotherhood of Maintenance of Way Employees, 93 F.Supp.2d 751 (N.D.Tex.2000) The district judge denied the railroad that relief but suggested that on a different record such an injunction regulating future conduct by the union might be justified. Id. at 760. The district court's denial of the injunction was not appealed.

.In his Memorandum Opinion and Order the district judge refers to eighteen suits in which a temporary restraining order or an injunction was issued against the union. Burlington N. Santa Fe Ry. v. BMWE, 143 F.Supp.2d 672, 679-685 (N.D.Tex.2001). However, only nine involved actual strikes by the union. The other nine involved either what the railroads perceived as a threatened strike, including what the district court characterized as situations where “BMWE refused to provide assurance that it would not strike,” or a counterclaim filed by the carrier seeking an injunction in a suit initiated by the union.

. Brotherhood of Maintenance of Way Employees v. Atchison, Topeka & Santa Fe Ry. Co., 1996 WL 904755, No. 96-1515, 96-1524, (C.D. Ill. December 17, 1996, reversed on appeal 138 F.3d 635 (7th Cir.1998)); Brotherhood of Maintenance of Way Employees v. Union Pacific Railroad Co., No. 00-2-396 (D.Colo.2000), reversed 19 Fed.Appx. 731, No. 00-1105 (10th Cir. December 21, 2000).

. CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees, No. 95-813 (M.D.Fla. August 28, 1995); Norfolk Southern Ry. Co. v. Brotherhood of Maintenance of Way Employees, (W.D.Va. November 8, 1996); Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees, No. 98-CV-4277 (E.D.Pa. August 14, 1998).